### JACKSON v. SAENGER–EHRLICH ENTERPRISES, Inc.

#### No. 5468.

Court of Appeal of Louisiana.
Second Circuit.

June 30, 1937.

Frank A. Blanchard and Chas. L. Mayer, both of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

HAMITER, Judge.

While making her exit from the Saenger Theater in Shreveport, La., after having witnessed a motion picture performance, plaintiff fell on a stairway and received injuries. She claims damages from the owner and operator of the theater in the amount of $1,525.

The trial court rejected her demands and she appealed.

In his written opinion, the district judge correctly states that:

"The Saenger Theater is a motion picture house in the City of Shreveport, owned and operated by the defendant.

Both the entrance and exit are on Milam street. First from the street comes the lobby where is situated the ticket window. Leading from this on the right or east side is the entrance where tickets are taken up; on the left or west side is an exit similar to the entrance on the right; both right and left sides are used as exits, while the right side is the only entrance. In both of these passage-ways there is a stairway consisting of eight steps leading from the level of the theater proper to the level of the lobby. These stairways are forty-eight inches wide and are covered in the middle part of same with a carpet. The steps are concrete with wooden strips set into same on which the stair runner or carpet is tacked.

"On the night of August 30, 1934, the plaintiff and her husband attended the show at this theater, and as they were leaving going down one of these stairways, Mrs. Jackson fell and received some injuries for which she seeks to recover in this suit on the allegation that she caught the heel of her shoe in the carpet. She claims in her petition that it was the west stairway and that said carpet strip 'was not securely fastened, and that said strip had been carelessly laid and improperly and unsecurely tacked or fastened and that said strip was loose at the end.'

"There can be no doubt but plaintiff was a patron at this theatre on the night in question, and that as she was leaving she fell on one of the stairways. There can be no doubt but that it is the duty of the proprieter of such a place to keep it in a reasonably safe condition for those attending same."

■ Supplementary to the last paragraph of the preceding quotation, it can properly be said that operators of establishments such as the one in question are not insurers of persons patronizing them. They must, however, be free from negligence. Givens v. De Soto Building Co. et al., 156 La. 377, 100 So. 534; McKelvy v. Capitol Amusement Co. (La.App.) 159 So. 143. They are required to exercise care, for the protection of their patrons against injury, proportionate to the danger known or reasonably to be apprehended, and commensurate with the circumstances and risks of the situation. 62 Corpus Juris, verbo, Theaters and Shows, § 53.

■ The question of whether or not defendant failed to use the required care and was negligent is one of fact and must be decided solely from the evidence taken on the trial of the case.

■ The record contains a mass of testimony relating to the particular stairway, and the exact place thereon, where the fall occurred, and to the cause of plaintiff's falling. This is conflicting beyond reconciliation. We shall content ourselves with merely summarizing the proof given in behalf of the respective litigants. A detailed discussion of the testimony of each witness will be of no benefit.

The evidence offered by plaintiff's witnesses tends to show that Mrs. Jackson and her husband went to the theater between 8:30 and 9:00 o'clock. After purchasing the necessary tickets, they proceeded through the east passageway, ascended the stairs therein located, and occupied seats in the auditorium. After viewing the picture, they departed down the center aisle, turned right, and were descending the stairs in the west passageway or exit, which was in semi-darkness, when Mrs. Jackson fell. She was wearing high-heeled pumps, and the heel of one of her shoes caught in the carpet on the top step, resulting in the freeing of her foot from the shoe and her precipitation to the level of the lobby. Mrs. Jackson lifted his wife and carried her to the ladies' rest room situated adjacent to the east or entrance passageway. In making this journey he proceeded through the west exit into the lobby and crossed in front of the ticket window. After a short period of time the husband, accompanied by another person, returned to the place where the fall occurred and found the shoe on the top step with its heel resting in a torn place in the carpet. On the following morning Mrs. Jackson journeyed to the theater and examined the carpets on both stairways. On the west one at the point where her heel was caught she found a tear or raveled place. A tear was also noticed in the edge of the carpet on the east stairway.

A summary of the material evidence furnished by defendant is that Mr. and Mrs. Jackson were descending the east stairway, instead of the west one, when the accident occurred, and the passageway there was well lighted. Their exit was being made at the conclusion of a performance and all lights at that time were aglow. Plaintiff and her husband were walking immediately in front of Mr. and Mrs. W. A. Stewart, both of whom were disinterested witnesses

690

and testified in the trial of the case. When the fall took place the latter were on approximately the second step from the top, while the former were about two steps below them. The turning of plaintiff's ankle was noticed by Mrs. Stewart. The ticket taker for the theater, who was not in defendant's employ when the case was tried, assisted in removing the injured party into the adjacent rest room. The carpet on the steps in the east passageway was comparatively new and was in no manner defective, it having been installed during the preceding thirty days, and the carpet on the opposite stairway was in good condition. A daily inspection of the stairway carpets was made by the management.

It is earnestly contended by counsel for plaintiff that the proving of the accident made out a prima facie case, and the burden was then on the defendant to show absence of negligence. As to whether or not this contention constitutes a correct statement of the law we do not decide. Should it be conceded arguendo that the onus probandi was with defendant, a decision relative to the question of its discharge is necessarily dependent upon an acceptance of one side or the other of the conflicting testimony. A matter involving the credibility of the witnesses is presented. It is a most difficult, if not an impossible, task to make a decision of this kind from the typed record.

This litigation furnishes a fitting case for the application of the well-established doctrine that where the evidence concerning material issues is conflicting, and the credibility of the witnesses is involved, the trial court's findings of fact will be given great weight, and will not be disturbed by the reviewing court unless manifest error appears.

The district judge in his written opinion gave a brief recital of the testimony of each witness in the case, and after conceding for the sake of argument the correctness of plaintiff's contention regarding the question of burden of proof, stated:

"In this resume of the testimony we have tried to be brief, and have made no attempt to reconcile the testimony of the witnesses for plaintiff with that of the witnesses for the defendant for it cannot be done. There are many contradictions between the witnesses, even those on the same side.

"We think a fair consideration of the testimony leads to the inevitable conclusion that defendant has met the burden of proof, and there is judgment rejecting the demands of plaintiff."

The witnesses were seen and heard by the trial judge when their testimony was given, and he also observed their demeanor. This privilege is not afforded to us. Under the circumstances of the case we are unable to say that his findings of fact were manifestly wrong, and we do not feel justified in disturbing the judgment appealed from.

Accordingly, it is affirmed.