HAZEL M. BEACH vs. S. S. KRESGE COMPANY.

JAY BEACH vs. SAME.

Hampden.     December 28, 1938. — April 10, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Negligence*, Store, One owning or controlling real estate.

Evidence did not warrant a finding that the proprietor of a store was responsible for the dropping of a scoopful of ice cream on the floor near the ice cream counter, nor that sawdust scattered generally over the floor had been used by the proprietor to cover up the ice cream without removing it, nor that the ice cream had been there so long when a customer slipped on it that the proprietor was negligent in not having sooner discovered and removed it.

Liability of the proprietor of a store to a customer cannot be founded merely on a moderate slope of a properly constructed floor.

Two ACTIONS OF TORT.  Writs dated January 11, 1935.

Verdicts for the defendant were ordered by *T. J. Hammond*, J.  The plaintiffs alleged exceptions.

The cases were submitted on briefs.

*J. F. Egan*, for the plaintiffs.

*H. P. Small & J. S. Bulkley*, for the defendant.

QUA, J.  The plaintiffs are husband and wife.  The wife's action is for personal injury sustained on August 16, 1934, while she was a customer in the defendant's store, as the result of slipping on some ice cream which had fallen upon the floor.  The husband's action is for consequential damages.

The principal question is whether there was any evidence for the jury of the defendant's negligence with respect to the presence of the ice cream upon the floor.  On this issue the wife's own testimony was to this effect:  It was a rainy afternoon and "very bad out."  · As she entered the store she proceeded from twelve to fifteen feet or a little more toward a stairway leading to the basement.  There was "a lot of sawdust" on the floor.  ·There was sawdust completely over "this general whole floor space."  "It wasn't

all over the floor space. It was scattered, now and then, scattered around." She fell about half way between the brass rail on the stairway and the corner of the ice cream counter. She had to go by "a lot of people" standing at the entrance eating ice cream, and there were more people in the aisle near the stairway. The piece of ice cream on which she slipped "was like a scoop of ice cream." It was "round on all sides just as if it had come out of the top of an ice cream cone." It seemed as though there was a scoopful of ice cream where she fell, and the sawdust was all around, "all over the ice cream and all mixed in it."

The plaintiffs' daughter, called by the plaintiffs, testified that the sawdust on the floor was "kind of soggy"; that you could see where her mother stepped in the ice cream with her heel, and there was some ice cream left "where the sawdust was covered over"; that it was "like an ice cream cone full"; that sawdust was scattered all around the ice cream counter and where she and her mother had come in at the door, "around the front of it"; that there was "sawdust on the ice cream and it was kind of wet"; that the ice cream was "right near the ice cream counter"; that she did not know whether the ice cream was in the shape of a scoop; that it looked "as though it was a half scoop full and was a five cent size"; that "the sawdust was coming from the door all the way in and about down to the right hand side of the stairway"; that there was quite a lot of it, about an inch, on the floor, thicker in some places than in others; that the floor was damp and people's shoes were probably wet from the rain "as they walked down." Some carried umbrellas. When asked whether the ice cream or the sawdust was "closer to the floor" this witness answered, "Well, the ice cream you could see most, because there wasn't much sawdust where she scraped it." Where it was scraped away you could see the ice cream. There was an area perhaps four inches long, "where she scraped it."

Both witnesses testified to the presence of numbers of people about the door, the ice cream counter, and the approach to the stairway.

We have stated the evidence in considerable detail because of the plaintiffs' contention that it would warrant the jury in finding that the defendant had knowledge of the presence of the ice cream on the floor and had used the sawdust to cover it up without removing it. The evidence fails to support that contention. Neither the testimony of Mrs. Beach nor that of her daughter has any tendency to show that the sawdust had been placed upon the floor with reference to the ice cream, whether the sawdust covered the entire floor or was scattered in various places. A finding that the sawdust had been put in one place would be contrary to all of the evidence. The dampness of the floor near an entrance, due to the tramping of many wet feet, would furnish at least as plausible a reason for the spreading of sawdust as would the dropping of one scoopful of ice cream. With sawdust on the floor and customers coming and going, the ice cream would quickly become covered and mixed with sawdust. Moreover, Mrs. Beach had stepped into it before the witnesses saw it.

The evidence wholly fails to show that the defendant rather than some customer was responsible for the dropping of the ice cream, or that it had been on the floor long enough to charge the defendant with negligence. There is no reason to suppose that the sawdust was a source of danger, and there was no evidence of negligence in the condition of the floor itself. *McGuire* v. *Valley Arena Inc.* 299 Mass. 351, and cases cited. This case is very similar to *Norton* v. *Hudner*, 213 Mass. 257, and is to be classed with that case and with *Zugbie* v. *J. R. Whipple Co.* 230 Mass. 19; *O'Neill* v. *Boston Elevated Railway*, 248 Mass. 362; *Mascary* v. *Boston Elevated Railway*, 258 Mass. 524; *Sisson* v. *Boston Elevated Railway*, 277 Mass. 431; *Tariff* v. *S. S. Kresge Co.* 299 Mass. 129, and *Manning* v. *Smith*, 299 Mass. 318. It is distinguishable from *Anjou* v. *Boston Elevated Railway*, 208 Mass. 273; *Tack* v. *Ruffo*, 263 Mass. 487; *Blake* v. *Great Atlantic & Pacific Tea Co.* 266 Mass. 12; *Caron* v. *Gibbs*, 269 Mass. 431; *Hudson* v. *F. W. Woolworth Co.* 275 Mass. 469; *White* v. *Mugar*, 280 Mass. 73; *Jennings* v. *First National Stores, Inc.* 295 Mass. 117; *Con-*

*nair* v. *J. H. Beattie Co.* 298 Mass. 550; *Zanes* v. *Malden & Melrose Gas Light Co.* 298 Mass. 569, and other cases cited by the plaintiffs.

The plaintiffs were not harmed by the exclusion of evidence that the floor at the place of the accident sloped at a grade of about six inches in nine feet. Ramps as means of overcoming differences in level are in common use in theatres, railway stations, stores and other public places. If properly constructed (and there was in this case no evidence or offer of proof to the contrary), their presence, like that of steps, must be accepted by patrons, and is not a ground of liability. *Ware* v. *Evangelical Baptist Benevolent & Missionary Society of Boston,* 181 Mass. 285. *Chick* v. *Gilchrist Co.* 208 Mass. 183. *Pastrick* v. *S. S. Kresge Co.* 288 Mass. 194. *Abrahams* v. *Zisman,* 293 Mass. 375. *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258. *Hogan* v. *Metropolitan Building Co.* 120 Wash. 82. Compare *Kennedy* v. *Cherry & Webb Co., Lowell,* 267 Mass. 217; *Mulloy* v. *Kay Jewelry Co.* 289 Mass. 264; *Waldo* v. *A. H. Phillips, Inc.* 299 Mass. 349; *Glynne* v. *National Exhibition Co.* 204 App. Div. (N. Y.) 757.

In each case the entry will be

*Exceptions overruled.*