## McGREGOR et ux. v. SAENGER–EHRLICH ENTERPRISES, Inc., et al.

### No. 6050.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

Rehearing Denied April 4, 1940.

Writ of Certiorari and Review Denied April 29, 1940.

Cook, Cook & Egan, of Shreveport, for appellants.

Foster, Hall & Smith, of Shreveport, for appellees.

TALIAFERRO, Judge.

Mrs. Ora Smith McGregor, the afternoon of February 3, 1938, sustained injury from a fall while in the Strand Theater building in the City of Shreveport, and sues for damages. Her husband, Ernest M. McGregor, Sr., joins in the suit and prays for judgment for the expenses incurred in treating his wife and for loss of earnings to the community of acquets and gains directly resulting from her disability. The Employers Liability Assurance Corporation, Ltd., carrier of public liability insurance for the theater building owner, also was impleaded. Herein, reference to plaintiff means Mrs. McGregor and reference to defendant means Saenger Ehrlich Enterprises, Inc.

After purchasing an admission ticket, plaintiff entered the theater building and ascended the steps leading to the balcony. She reached the aisle which divides the balcony into two sections, upper and lower, at its east end, turned to her left, walked westerly along the aisle looking for a desirable seat. When the first line of steps downward was reached, she stopped momentarily, thinking she would view the picture from about that locus, but changed her mind and resumed travel along the aisle. On her right side ran a guard rail, made of metal tubing, approximately 3 feet high. At the next or center line of steps downward there is an open gate in this guard rail to admit patrons desiring seats in that part of the balcony. It is approximately 4 feet wide. Plaintiff reached the post on her side of the opening safely, but as she attempted to go forward she lost her balance and fell down the steps to the third one. Why she lost her balance is the most seriously controverted fact in the case.

The aisle referred to is covered by a carpet runner 34 inches wide, a seam in which, when originally laid, extended southerly from very near the base of the post at which plaintiff fell.

Plaintiff alleges that as she started to turn to her right to go down the steps the "heel of her right shoe caught in a hole or opening in the carpet or rug" covering the aisle, and that this caused the loss of balance and the fall. She charges that the fall was attributable to negligence of the defendant in that it failed to provide a safe passageway on said aisle and that this negligence was the direct and proximate cause of the accident. Amplifying this blanket allegation of negligence, plaintiff avers that the hole or opening in the runner resulted from gradual wear of the threads over a long period, which condition should have been discovered and would have been discovered by an adequate system of inspection; that its existence was discoverable by inspection for a considerable time prior to the accident; that it was negligence to not have discovered the hole or opening and repaired same prior to the accident; that the lighting arrangement about the locus of the hole or opening was deficient in that it did not illuminate the surface of the runner sufficiently to enable plaintiff and other persons to detect said hole or opening.

Defendant admits that plaintiff sustained injury from a fall in its theater building at or about the time and place alleged, but denies that any negligence on its part caused or contributed to the fall; and, especially denies that the rug or runner at the time, before or since, had any worn place, hole or opening in it. It is averred that prior to the accident and thereafter thousands of patrons passed over the locus at which plaintiff fell, without accident or incident of any character.

Defendants appealed from judgments for three thousand ($3,000) dollars and seven hundred eight ($708) dollars in favor of Mrs. and Mr. McGregor, respectively. Answering the appeal, plaintiffs pray for substantial increases.

Plaintiff does not now contend that her fall was due to the heel of her shoe catching in a hole in the runner. There were no holes at all in the runner at the place she fell or elsewhere. She does contend that the threads which originally held the two ends of the runner together, from constant use by patrons, had worn out, allowing the edges to slightly recede, thereby developing a narrow aperture near the post, and that the heel of her shoe caught in this opening.

Plaintiff did not examine the runner after she fell to ascertain its condition. She says that when she attempted to raise her right foot, something held it. She does not know what it was.

Eight days after the accident (February 11th), Mr. McGregor, accompanied by his counsel, visited the theater and repaired

to the location whereat plaintiff told him she had fallen. A picture was then being projected and the lights were subdued. He dragged one of his feet along the surface of the runner until the seam was found. He says he discovered a break in it wide enough to introduce three of his fingers. He was forced to get on his knees to make the discovery. The opening was eight or ten inches from the metal post at the gate above referred to. Within an hour's time, Mr. McGregor, accompanied by three other persons, again inspected the locus. An opening in the seam was then discovered, in addition to that found by him on his first inspection. It was about three inches wide and four inches beyond the one first discovered. No part of either aperture was over ⅜ inch wide, the widest part being at the middle. One witness says the edges of the runner at each of the openings was slightly turned up. The last discovered opening is near the middle of the runner, both being on Mrs. McGregor's side. If plaintiff's heel caught in either opening, it was in that nearest the post.

On the morning of February 12th, pictures were made of the locus where plaintiff fell. One of these discloses what appears to be overhand exposed stitches across the seam on the south one-half of the runner. None are noticeable on the other (plaintiff's) half. The pile of both ends of the runner on her side appear to contact normally. The picture does not reveal excessive wear at that point. A witness for plaintiff testified that the referred to overhand stitches were not present the day prior to making the pictures. He also testified that the openings found by him on the other one-half of the seam were not present when the pictures were made; that they had been closed by sewing.

Defendant's chief usher was promptly notified of plaintiff's fall and hurried to the scene. She was there. He testified that plaintiff then and there stated to him "that she was unaccustomed to the darkness and slipped on the floor or stairs." She denied making this statement. This usher and another employee immediately examined the runner closely and found no defects or openings in it. The usher and the insurance adjuster testified that they together, on February 9th, examined the runner where plaintiff fell, and found no openings in the seam.

The employee charged with the duty of sweeping the balcony floor testified that on the morning of February 3rd, as was the rule, she ran a vacuum cleaner over the runner, and passed over the seam in question. There is attached to the cleaner, near the floor, a small electric light to illuminate the floor surface in front of and about the cleaner. It was functioning the morning of February 3rd. She is positive the seam was then intact for its entire length. This sweeping process was repeated on the morning of February 4th and on succeeding mornings. No openings were discovered at all.

Testimony was introduced to prove that regularly the interior of the theater building was inspected by employees charged with that duty, for the purpose of discovering defects, if any, of any character, in the equipment, etc., and that nothing wrong with the runner was ever found.

Defendants submit and argue these legal propositions in support of their defense of non-liability, to-wit:

1. That it has not been proven that the openings in the runner, claimed to have been found by plaintiff's witness on February 11th, eight days after the fall, existed at the time she fell.

2. That if the openings were there at the time, plaintiff has not proven that the heel of her shoe caught in one of them and tripped her.

3. Conceding that the opening existed the afternoon of February 3rd, and that plaintiff fell because the heel of her shoe hung in it, and that the opening was of such character as to be classed as a defect, the continued existence of which compels an inference of negligence against the building's owner, even in these circumstances, defendant may not be cast for damages herein because it is not shown that such defect arose prior to the morning of February 3rd, when the customary inspection was made and when the runner was gone over by the electric vacuum cleaner; that it is not shown that defendant had knowledge of the existence of the defect; that the facts do not warrant a holding that constructive knowledge should be inferred.

If the opening in the runner was found to exist eight days after the accident, it does not necessarily follow that it existed at the time of the accident, nor for any considerable length of time prior thereto.

Hundreds of persons daily view pictures in this theater. It has a seating capacity of two thousand. That part of the lower balcony where plaintiff fell, is liberally patronized. The pictures are continuous for twelve hours each day. The seam in question is walked over daily by many hundreds of persons, and in eight days by several· thousands, yet plaintiff is the only one who fell there. The seam could be intact one day and out of condition the next day. The heel of one person's shoe could tear it apart and within a few moments another person might· be tripped there or fall.

■ To say positively that the aperture in the seam existed on February 3rd, presumption would have to be indulged simply from the fact that it was found to be present eight days later. To so conclude, the presumption would have to be given more probative weight than the positive testimony of defendant's several witnesses. The rule in such a case is well expressed in 22 Corpus Juris, page 92, par. 30, to-wit: "As a general rule proof of the exist-. ence of a present condition or state of facts does not raise any presumption that the same condition or facts existed at a prior date. There are, however, cases in which a contrary view has been asserted; usually where the present condition or state of facts is one that would not ordinarily exist unless it had also existed at the time as to which the presumption is invoked." Barelli et al. v. Lytle, 4 La. Ann. 557, supports the principle here discussed.

■ The testimony does not convince us that the opening existed at the time plaintiff fell, and, if it did then exist, it is not clearly proven that its presence was the cause of the fall. However, it is further our opinion that the third defense urged is sustained by a preponderance of the testimony and is supported by the law pertinent.

The runner in question was originally machine laid. The ends were attached by under stitching. This brought them so close together that the joint could not be easily discerned. If the openings developed, as contended, it was due to the under stitches giving away. The runner was only three years old at time of the·accident. The pictures reflect it to be in very good condition. Defendant's witnesses· testify it had never been repaired because there was no need for so doing.

It is argued that the overhand stitches on the seam's south end, referred to above, were made during the day previous to making the pictures. The need of this being done does not appear because no one found any openings in that part of the seam. It is also testified that the openings on the end of the seam nearest the post at the gate were closed by sewing between the time of their discovery on February 11th, and the taking of the pictures the following morning. Why this sort of sewing was there employed and overhand stitching employed on the opposite end, is not clear to us. If the whole seam needed re-sewing, why were two different methods employed?

There appears to be no Louisiana case to serve as a precedent to the present one. Many cases, similar in facts, and involving the same legal principles as are here present, have been adjudicated in other jurisdictions. These decisions, with few or no exceptions, are unfavorable to plaintiff's contentions.

■ It has been held in this state, in fact well settled, as is true elsewhere, that the operator of a theater is not the insurer of the safety of its patrons. Givens v. De-Soto Building Company, 156 La. 377, 100 So. 534.

■ Jones, in his excellent work on Evidence in Civil Cases, Vol. 1, page 29 ·(4 Ed.), succinctly states the correct rule in tort cases, where negligence is charged as the cause of injury, as follows: "A familiar presumption, closely related to that of innocence, is embodied in the rule that negligence is not to be presumed, that, on the contrary, the exercise of ordinary care in the premises is to be presumed, and that the party charging negligence must show that the party sought to be charged violated some duty either by act or omission, and thereby caused the injury of which complaint is made. Negligence is not to be presumed from the happening of an accident, or from the suffering of injury by one person at the hands of another, unless the circumstances authorize an application of the doctrine of res ipsa loquitur."

■ It has often been said by courts and judges that "Verdicts cannot rest upon guess or conjecture. It is the duty of the plaintiff to allege and prove negligence affirmatively."

The case of Hunker v. Warner Brothers Theatres, Inc., decided by the Supreme Court of Appeals, West Virginia, is strikingly similar in facts to that at bar. 115 W.Va. 641, 177 S.E. 629, 630. Plaintiff in that case was injured from a fall allegedly caused by a raise in the carpet. In rejecting the demand, the court said:

"The mere fact that the defendant's carpet was raised at the moment of accident does not denote that it had been in that condition any certain period prior to the accident. Unless the condition had existed long enough to have given the proprietor opportunity to have seen it in the exercise of due care, he cannot be held liable. 'Knowledge either actual or constructive is essential to impose liability.' 62 C.J., subj. Theaters and Shows, § 47; O'Toole v. Thousand Island Park Ass'n, 206 App.Div. 31, 200 N.Y.S. 502. Since there is no evidence upon the duration of the condition or evidence from which a reliable inference can be drawn, the duration is purely a matter of conjecture. It has been held generally that evidence so meager is not sufficient to support a presumption of negligence. * * *

"Defendant presented testimony that the carpet was gone over every morning with an electric sweeper by the janitor, one of whose duties was to report to the manager anything wrong with the carpet; that it was walked over every day just before the theater opened by an usher (with a flashlight) whose duty was 'to check the aisle to see that all things were in proper places'; that both employees had performed their duties on the day of (and prior to) the accident and both had found the entire length of the carpet to be flat on the floor; that no repair or adjustment has ever been made on the carpet and it now lies flat and in its proper position on the floor; and that no one else has ever fallen in the theater. None of this testimony was controverted."

In Dalton v. Hooper, Tex.Civ.App., 168 S.W. 84, 85, the following charge to the jury was approved: "Unless you find and believe that the stairway herein referred to was defective as alleged by plaintiff, and that such defect, if any, was brought to the notice of defendants or their agents or employés, before the accident herein complained of, or had existed for such a length of time that by the exercise of ordinary care the defendants or their agents or employés would have discovered such defect, if any, then your verdict must be for the defendants on this issue."

It was held in Weingard v. Putnam Theatrical Corporation, 225 App.Div. 808, 232 N.Y.S. 296, 297, that: "Liability could not be imposed upon defendant unless it was also shown that this condition of the carpet was known to defendant, or had existed for such a length of time that defendant should have known of it, or was of such a nature that it must have existed for such a length of time as to give it notice."

The following cases support what the courts said in the foregoing quotations, viz., Toland v. Paine Furniture Co., 175 Mass. 476, 56 N.E. 608; Nephler v. Woodward, 200 Mo. 179, 98 S.W. 488; Jennings v. Tompkins, 180 Mass. 302, 62 N.E. 265.

Plaintiff appears to have abandoned the charge that her fall was to some extent due to defective lighting. It is without merit.

For the reasons assigned, the judgment appealed from is reversed, annulled and set aside. Plaintiffs' suit is dismissed at their cost.

HAMITER, J., dissents.