**WEST v. SEIGLE THEATRE et al.**

No. 6275.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

· M. C. Redmond, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

TALIAFERRO, Judge.

The defendants, Roland and Otto Seigle, own and operate a moving picture theatre in the City of Monroe, Louisiana, the balcony of which is set apart for the exclusive use of colored patrons. Plaintiff, a colored man, while viewing a picture therein was injured in a stampede of patrons precipitated by one or more persons yelling "Fire!", when the film of the picture then being projected ignited. He sues for damages resulting from the injury.

Evidently, plaintiff did not know, when he filed suit, the true origin of the film's ignition. He alleged that the fire was attributable to defendants' carelessness and negligence in that the film was an old one and which, from constant use, wear and tear had become very defective; that due to its physical condition the film caused the projecting machine to "hang up" in some manner and, being of combustible substance, caught on fire.

Defendants denied all of the allegations of the petition save their ownership and operation of the picture theatre and that plaintiff was a patron therein when the fire occurred. Plaintiff's demand was rejected and he appealed.

On trial of the case the true origin of the fire was revealed by defendants' witnesses. It was to no extent traceable to the causes alleged by plaintiff. The film was a new one. The machinery and equipment employed to project the picture are said to be of standard make. The operator, from experience and training, is competent. A hard shelled bug, attracted by the light of the machine (while those of the theatre were out), got into the booth which houses the machine and equipment, and, despite energetic efforts of the operator to expel or kill it, made its way into the machine and quickly descended into the aperture plate. This caused the film to fly off of the sprocket that pulled it. The derangement of the set-up evidently brought the film closer to or in direct contact with the heat generated to project the picture, and the

fire started. It was extinguished within two minutes, but not before two hundred feet of the film were consumed. The flames flared up, but it is not made certain that they extended through the port and picture holes beyond the walls of the booth. However, the fire or its reflection was seen by some of the patrons in the balcony, and the alarm was given. There was instantly a mad rush for the exits. Plaintiff's right foot was caught under a seat and, either from his own frantic efforts to disengage it or by being run over by other patrons, he suffered a not serious injury of the foot. He was seated several feet in front of and below the booth.

Plaintiff has abandoned entirely his original theory of the cause of the fire and has adopted as correct the version thereof advanced by defendants. He contends, however, that it was the operator's duty to have stopped the machine immediately on discovery of the bug's presence in the booth and to have kept it stopped until the intruding bug had been killed or expelled; that his failure so to do amounts to actionable negligence which was the proximate cause of the fire, the consequent stampede and injury to him.

Never before did a bug perform or cause damage in this theatre as did the one now discussed. Such a happening was not expected nor anticipated by the owner or operator, and, therefore, no special precaution had been taken to guard against it. It does appear that bugs occasionally do enter the booth and buzz about the light.

Defendants' booth, to meet legal requirements, is constructed of reinforced concrete, eight inches thick. This sort of construction is required because of the highly inflammable substance of which the film is made. Its constant exposure to the intense heat necessary to project the picture, continuously renders it liable to ignition. It is shown to be not uncommon for films of this character to catch on fire, but when it occurs within a fire-proof room the chances for spreading are completely eliminated.

■ The standard of care due by operators of theatres and movie shows to their patrons, in this state, as well as in others, is definitely fixed by scores of court decisions. The general rule is that the highest degree of care is not exacted; reasonable or ordinary care meets legal

requirements. As a corollary, it follows that the operator of such a place is not the insurer of the safety of his patrons.

However, the standard of care above stated applies more particularly to those parts of the building and its equipment which are not per se or intrinsically hazardous or from which ordinarily hazards do not arise. This rule is not applicable to those phases thereof which are in themselves hazardous, or which, for their successful conduct, the use of highly inflammable or explosive substances is required. In such cases the very highest degree of care and caution is exacted for the protection of those who patronize such places.

The general rule with variations is well stated in 62 Corpus Juris, Sec. (53) D, pages 867, 868, to-wit:

"It has very generally been declared that the proprietor of a theater or other place of public amusement, in order to bring himself within the requirement of the general rule heretofore stated, must exercise that degree of care which, under the same or similar circumstances, would be exercised by an ordinarily careful or prudent man. However, ordinary or reasonable care is always a relative term, and no absolute test can be given as to what constitutes the exercise thereof by a proprietor of a place of public amusement. This is necessarily so for the reason that due or ordinary care varies with the situation and circumstances in each particular case, although the standard of care remains the same. Care must be exercised to make the place of amusement as safe as is reasonably consistent with the practical operation thereof, and be reasonably adapted to exhibitions given, the amusements offered, the places to which patrons resort, and also, in some cases, to the customary conduct of spectators of such exhibitions. *The care must be proportionate to the danger known or reasonably to be apprehended, and commensurate with the circumstances and risk of the situation, to protect patrons against injury.* The greater the known or real apprehended danger, the greater the care required. And in case of amusement devices which are inherently dangerous, the standard of ordinary or reasonable care requires the exercise of a high degree of care."

The rule is tersely stated in 26 R.C.L., page 714, Sec. 15, thus:

"He is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position, and *his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place.*"

Applying the italicized portions of the rule to the facts of this case, the conclusion is easily reached that defendants and their operator should have anticipated that an accident of the character as did happen, could happen. They well knew that the film was highly inflammable and that it would ignite from the machine's heat if drawn close to or had contact with it. *It is general knowledge that lights attract bugs and other insects.* Defendants are held to have known that bugs could enter the machine with possible injurious results. The fact that such had not previously happened is no defense.

It does not appear, nor is it contended, that any efforts whatever were made to prevent bugs from entering the machine. In this respect the machine was defective, knowledge of which was ascertainable on simple inspection. Care commensurate with the circumstances and risk involved was not exercised. Precautions should have been taken that would have made it impossible for such an accident to happen. Defendants did not meet the duty imposed upon them as ordinarily careful and prudent persons.

In view of the facts and conditions being as above related, it was the obvious duty of the operator on discovering the bug's presence about the machine, to have instantly stopped it until the potential danger had passed. Had he done this, the fire would not have occurred, the stampede would not have taken place and plaintiff would not have been hurt. The failure to stop the machine, all things considered, was actionable negligence and the proximate cause of plaintiff's injury.

Plaintiff is forty-six years of age and earned a livelihood by yard working. He testified that on an average he earned $6 or $7 per week. His right ankle was dislocated. He also suffered a spica fracture of the oscalcis. Attending physician reduced the injury and applied a cast. This was removed at expiration of sixty days. Massages were intermittently ad-

ministered for thirty days, and thereafter appropriate treatment was given. He suffered pain, particularly at night. His physician testified that occasionally "when plaintiff has been doing a lot of work" the joint has to be massaged. He also testified that he thought that the joint would always give trouble. We are not convinced that the ankle will be permanently impaired, but are rather of the opinion that by sensible use it will regain its former good condition.

Plaintiff testified that he lost three months from work. For this loss of time he is entitled to recover $78 on the basis of $6 per week. For pain and discomfort, we think $250 adequate compensation. He owes his physician $50 for services rendered on account of the injury.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, Johnnie West, and against defendants, Roland Seigle and Otto Seigle, in solido, for the sum of Three Hundred Seventy-Eight ($378) Dollars with legal interest from judicial demand and for costs.