The plaintiff herein seeks to recover damages for certain alleged injuries which he contends were the result of a fall experienced by him upon the premises of the Southern Amusement Company, Incorporated, on the evening of January 22, 1940. The lower court rendered judgment in plaintiff's favor and defendant is now prosecuting this appeal.
The Southern Amusement Company, Incorporated, operates a motion picture theatre on Second Street in the City of Natchitoches, Louisiana. It is situated approximately one-half block north of St. Dennis Street and on the west side of Second. The lobby is open and faces Second Street and is about 20 feet wide on the sidewalk and narrows to about 15 feet at a point approximately 4 feet from the sidewalk and is about 13 feet in depth from the sidewalk or entrance to the theatre door.
As one enters this open lobby, the ticket window is found at the extreme right-hand side of it. The sidewalk in front of the theatre is 12 feet from the curb line to the lobby opening. Extending from the lobby out over the sidewalk is a triangular canopy.
On January 22, 1940, a slow and continued snow fell throughout the day and evening in the City of Natchitoches. Snow in this particular vicinity is most unusual.
It is the plaintiff's contention that at about 6 o'clock P.M., on the evening of January 22, 1940, he was proceeding to enter the defendant's amusement theatre; that he had approached the theatre from the south or from down towards St. Dennis Street. When he arrived at the southern end of the lobby, he started walking diagonally from that point towards the ticket window for the purpose of purchasing a ticket and that when he had arrived at a point about halfway across the lobby he slipped and fell and as a result of the fall, suffered injuries to his ankle, spine and hip.
Plaintiff further alleges that the cause of his fall were the heaps of snow and ice which had been allowed to accumulate on the floor of the lobby. He states that after he had fallen, he slipped around in an attempt to get back on his feet and that it was some three or four minutes before he managed to get up; and that he then walked next door to the adjoining cafe and requested some one to carry him home. There was no one available so he walked around behind the cafe and secured two sticks, with which assistance he proceeded to walk about a block and a half to the residence of Mrs. Michael where he secured her assistance to help him walk the remaining two blocks or so to his residence.
Plaintiff offered two witnesses to substantiate his version of the facts and cause of his falling. According to their testimony, these two witnesses were on the opposite side of the street and at no time did they cross or go near the lobby after they claim to have seen plaintiff fall. Plaintiff testified that the two witnesses were on the same side of the street as the theatre. These witnesses were unable to determine the cause of the fall and made no attempt to do so.
Plaintiff testified that he remained on the floor for several minutes while attempting to get to his feet and that through all this time he was immediately in front of the ticket office in full view of Miss Thelma Cloutier, who was in charge of this office; that he saw her; that he knew her well; and that she looked directly at him while he was down. He stated that he made no remark to her and made no complaint or report of the accident to any one, and the first knowledge the management or employees of the theatre in Natchitoches had of the alleged accident was when plaintiff's attorney wrote a letter to the corporation at its Lake Charles domicile, which letter was received on February 15, 1940.
Miss Cloutier testified that she neither saw nor heard any one fall in the lobby of the theatre while she was on duty; that she came to work in the afternoon around 3 o'clock and that the entire lobby had been previously cleared of any snow or ice that might have been therein and that during the remainder of the evening and up until the time she left the theatre, about 6:20 P.M., the janitor, Joseph Metoye, had kept the lobby cleared of all snow and ice. She *Page 460 
further testified that when she walked from the lobby on her way out of the theatre at approximately 6:20 P.M., the lobby was clean and no foreign matter was present therein.
Miss Helen McLean, the cashier and ticket seller who relieved Miss Cloutier at 6 o'clock, testified that when she entered the theatre through the lobby a few minutes before 6 o'clock, the lobby was clean and that the janitor kept the lobby cleaned of snow and ice throughout the entire evening until closing time.
Vallery Clark, who worked in the projection room of the theatre, testified that when he went to supper at 5:30 P.M., he went out through the lobby and that it was clean and free of snow and ice at that time and was in the same condition when he returned a few moments after 6.
That the lobby was maintained in a condition free of snow and ice during the entire evening, as well as afternoon, was substantiated by Carson Vercher, Charles Rivet, Jr., Joseph Metoye, the janitor, and Mack Jarrett, the manager of the theatre.
Mr. Jarrett testified that he had instructed the janitor to keep the lobby and the sidewalks in front thereof free and clear of all ice and snow and that periodically during the afternoon and entire evening, the janitor swept out what little snow or ice that may have drifted into the lobby as well as that which was tracked in upon the feet of the customers.
Counsel for plaintiff suggests that the accident might have occurred while the janitor had gone to supper, between the hours of 6 and 7. There is no merit in this contention for the reason that plaintiff is positive that Miss Cloutier was in the ticket office at the time he fell and she did not remain in said ticket office after the hour of 6 o'clock. We think it is very positive that the accident occurred, if there was an accident, before the hour of 6.
There is undisputed evidence in the record that the lobby of the theatre was constructed in an approved manner.
There is, in our minds, some doubt as to whether plaintiff actually fell while in the lobby of the theatre, but, for the purpose of a decision here, we can find that he did. If we find that he did fall, as he claims, in the theatre, we think the evidence is most convincing that there was no negligence on the part of the defendant contributing to his fall. Plaintiff testified that there were piles of snow 3 inches in height in the lobby of this theatre. He has failed to produce a single witness to corroborate him in this respect. The defendant has produced seven witnesses, all of whom testify positively that there was no accumulation of snow and ice in the lobby and we are convinced that the testimony shows beyond any question of doubt that the manager of the theatre used all reasonable efforts to maintain the lobby free from snow and ice.
It is incumbent upon plaintiff to prove his case with a preponderance of the evidence and he has failed to do so. To the contrary, the defendant has established by a great preponderance of evidence that it was not negligent in any manner and that the lobby was kept clean and free of snow and ice.
It is well settled in the jurisprudence of our State that the operators of theatres are not insurers of those patronizing them. They are only required to exercise reasonable care for the protection of their patrons against injuries. Jackson v. Saenger-Ehrlich Enterprises, La.App., 175 So. 688; McKelvy v. Capital Amusement Company, Inc., La.App., 159 So. 143; Doell v. St. Charles Theatre, La.App., 159 So. 401; Givens v. De Soto Building Company, 156 La. 377, 100 So. 534; and McGregor v. Saenger-Ehrlich Enterprises, La.App., 195 So. 624.
Admitting that plaintiff did fall in the lobby, it was not necessary for defendant to show why he fell or what caused it. Its only duty was to show that it was caused by no negligence on its part.
Plaintiff was asked on cross-examination if there was any snow or ice accumulated on the bottom of his shoes when he entered the lobby. His reply was that he did not know. Common experience teaches us that if snow or ice had accumulated on the bottom of his shoes, it might have caused his fall in the same manner as if ice or snow had been on the floor of the lobby and none on his shoe soles.
We are convinced that plaintiff has failed to make out his case and that defendant is clearly exonerated from any negligence.
The judgment of the lower court is therefore incorrect and it is now reversed and the demands of plaintiff are rejected, at his costs. *Page 461