Plaintiff, Mrs. Clementine Boucher, widow of John W. Luthjens, on the evening of January 6, 1944, entered the Saenger Theatre in New Orleans, and after witnessing a motion picture exhibition left the *Page 212 
theatre shortly after 7:00 o'clock, P. M. In emerging from the theatre, she left that portion thereof where the motion picture was shown, then crossed the inner foyer, and then went out of a door into the arcade which runs from Rampart Street to Basin Street, which is brilliantly lighted. Upon entering this arcade, she turned left and walked towards Rampart Street and when she reached a point in front of a popcorn stand she slipped and fell.
The arcades in front of the Saenger Theatre proper form the letter "T", that is to say there is one arcade running from Rampart Street to Basin Street immediately in front of the theatre, and another arcade running from Canal Street towards the theatre proper, which latter arcade merges into the one running from Rampart Street to Basin Street. The arcade which runs from Rampart Street to Basin Street is level in the center, and going toward Rampart Street and beginning at a distance of approximately 44 feet from the Rampart Street sidewalk, it has a slope of about 1 inch to each foot. The flooring of the arcade is constructed of terrazzo which is separated into a pattern or contour by means of brass strips imbedded, therein. terrazzo pavement or tiling is made of small marble scraps or particles imbedded in cement and then polished.
On the level portion of the arcade runing from Rampart Street to Basin Street, the owner of the Saenger Theatre operates a popcorn vending stand where corn is popped, placed into receptacles and sold to the patrons of the theatre, and to other persons.
Plaintiff claims that she was seriously injured in her fall and brings this suit for $29,530.50 against Paramount-Richard's Theatres, Inc., the owner of the Saenger Theatre, and its insurance carrier, American Mutual Liability Insurance Company, in solido. She alleges that she slipped on popcorn which was located on the floor of the arcade of the theatre near the popcorn machine. The charges of negligence imputed by plaintiff to the theatre operator are: the allowing of popcorn to remain on a sloping terrazzo floor in the vicinity of the popcorn machine, which floor had been waxed or polished to the extent that its surface was, slippery, and in combination with the popcorn located thereon constituted a hazard to patrons of the theatre traversing the floor.
Defendants answered disclaiming liability and pleading contributory negligence on the part of plaintiff, in not seeing the popcorn (if there was any) on the arcade floor.
The matter proceeded to trial on the above issues and the lower court rendered judgment in favor of plaintiff and against the defendants for the sum of $5,500.00, with interest and costs. The defendants have taken an appeal from this judgment, and plaintiff has answered the appeal praying for an increase in the amount of the award to $10,000.00.
Plaintiff's counsel first contend that the theatre owner was guilty of negligence in maintaining the terrazzo floor without an abrasive substance mixed therein, claiming that the floor without abrasives constitutes a hazard to patrons of the theatre walking upon it. Counsel for defendants answer that contention claiming that terrazzo tiling or paving without an abrasive or other non-slip material mixed therein is the standard and customary type of terrazzo floor in use in this city, and that no abrasive or non-slip material is customary or necessary on a level surface, or on any surface that has an incline as slight as the one in the theatre arcade. The incline or ramp involved in this case has a slope of approximately 1 inch to each foot.
There is a mass of testimony in the record regarding the terrazzo surfacing. The testimony shows that terrazzo is a common and ordinary type of paving in arcades, entrance-ways, stores and even on the sidewalks and neutral ground of Canal Street, which is the principal street in this city.
Harold A. Levey, an engineer, who testified as an expert witness for plaintiff, agreed that terrazzo is in standard use in many arcades, hotels, business houses and places of that sort. David S. Barrow, an architect, a witness for plaintiff, testified respecting the provisions of the 1942 building code of the city of New Orleans in regard to terrazzo floors and ramps. This witness also made reference to Sec. 144 of the 1926 building code, which became effective *Page 213 
on January 1, 1927. The provisions of the codes mentioned by the witness would in no wise apply to the floor involved in this case, as the terrazzo was placed in the arcade of the Saenger Theatre during the year 1926. Barrow further testified that he did not think it necessary to use abrasives in terrazzo where no inclined surface was involved.
Herbert A. Benson, an architect, George L. Ducros, a tile contractor, and Charles Davis, an architect, testified as experts for defendants and these witnesses were unanimous in their testimony that the floor in question is of standard construction and is neither hazardous nor dangerous.
[1] In view of the testimony of the five experts, there is nothing which supports the contention of plaintiff that the arcade floors are in any degree dangerous.
This brings us to the question of whether plaintiff slipped on buttered popcorn. The manager of the theatre and the operator of the popcorn machine testified that at the time of plaintiff's accident the corn was popped dry, that is no butter, oil or other greasy substance was used, and there is no evidence before us which would indicate that the popcorn sold on the date of the accident was other than as described by them.
The evidence, however, clearly preponderates to the effect that there was some corn on the floor in the vicinity of the popcorn machine at about the spot where plaintiff fell, and that the accident was caused by that fact. A disinterested witness who was standing in line waiting to gain entrance to the theatre testified that at the time, and at about the spot where plaintiff fell, there was some popcorn on the floor, which she had noticed before the accident. Another witness testified that after plaintiff's fall particles of popcorn were adhering to the heel of Mrs. Luthjens' shoe. We have no doubt that the plaintiff did step on popcorn and fell because of that fact.
Plaintiff's counsel contend that the very highest degree of care was required of the theatre owner under the circumstances. They argue that the popcorn in combination with the smooth terrazzo floor constituted a hazard which was brought about by the activity of the theatre operator in selling popcorn, and that no presumption should be favorable to the defendants. They contend that in view of the fact that popcorn was sold in the arcade, the theatre's duty was to make it impossible for accidents to occur, and that if an accident did occur under the circumstances the theatre is liable.
Counsel cite the case of Welcek et al. v. Saenger Theatres Corp. et al., La. App., 5 So.2d 577, 579. In that case the plaintiff, who was a patron of a theatre, was struck by a bottle dropped or thrown from a second story balcony, and counsel quote the following language used by the court:
"The effort to hold the operator responsible in damages herein is predicated upon the very exacting laws governing the duties and obligations of theatre operators generally to their patrons. Such duties and obligations are well defined by law. They are likened to those imposed upon carriers and innkeepers, but are not quite so strict or exacting. The following statement of the rule of law applicable to operators of theatres, shows, etc., which has been referred to, and, in whole or part, adopted by several decisions of this and other appellate courts, appears in 62 C.J., pages 867-868, paragraphs (53) D and (55) b, to-wit:
" 'It has very generally been declared that the proprietor of a theater or other place of public amusement, in order to bring himself within the requirement of the general rule heretofore stated, must exercise that degree of care which, under the same or similar circumstances, would be exercised by an ordinarily careful or prudent man. However, ordinary or reasonable care is always a relative term, and no absolute test can be given as to what constitutes the exercise thereof by a proprietor of a place of public amusement. This is necessarily so for the reason that due or ordinary care varies with the situation and circumstances in each particular case, although the standard of care remains the same. The care must be proportionate to the danger known or reasonably to be apprehended, and commensurate *Page 214 
with the circumstances and risk of the situation, to protect patrons against injury. The greater the known or real apprehended danger, the greater the care required.' "
Counsel also cite West v. Seigel Theatre et al., La. App., 200 So. 339; Jackson v. Saenger-Ehrlich Enterprises, Inc., La. App., 175 So. 689, and Master v. Alsina, La. App., 15 So.2d 660, 661, the latter case having been decided by this court and in which is found the following language: "It is a manifest, from a recitation of the pleadings in this case, that the question involved for determination is purely one of fact, as the law of the case is well settled. The owner of a theatre is not an insurer of the safety of his patrons. He is, however, liable for injuries sustained by them as a consequence of his neglect to keep his theatre in repair; for his failure to provide adequate safeguards for their use of the premises and for his failure to anticipate, and provide means to obviate, dangerous conditions which could be foreseen by a reasonably prudent person engaged in a similar business. See Wilson Iberville Amusement Co., La. App., 181 So. 817 and Brady v. Avenue Theatre Corporation, La. App., 194 So. 721."
Our attention is directed by counsel to the cases of Lonatro v. Palace Theatre Co., 5 La. App. 386, and Caviccri v. Gaiety Amusement Co., La. App., 173 So. 458, in which it was said by the court that theatres may be likened or compared to inn keepers and that as such they are liable in the same manner as carriers, and argue to us that the very highest degree of care is required under the circumstances surrounding this case.
[2] Whatever may have been the holding in those cases, the law is well settled that the operators of theatres are not insurers of those patronizing them. They are only required to exercise reasonable care for the protection of their patrons against injuries. Jackson v. Saenger-Ehrlich Enterprises, supra; McKelvy v. Capitol Amusement Company, Inc., La. App., 159 So. 143; Doell v. St. Charles Theatre, La. App., 159 So. 401; Givens v. DeSoto Building Company, 156 La. 377, 100 So. 534; McGregor v. Saenger-Ehrlich Enterprises, La. App., 195 So. 624; Mahfouz v. Southern Amusement Co., La. App., 3 So.2d 458.
Counsel for plaintiff argue that Cassanova v. Paramount-Richards Theatres, Inc., et al., 204 La. 813,16 So.2d 444, 447, decided by the Supreme Court, is a case in which it is held that the operator of a moving picture theatre is held to a stricter account to his patrons than that above expressed and quotes the following language from the opinion: "The authorities are in conflict as to what constitutes reasonable and ordinary care on the part of proprietors of places of public amusement, but we think the authorities holding that, because of the darkened theatres, moving picture exhibitors are held to a stricter account in the performance of this rule, express the sounder logic and the better view, for such a rule has the added weight of common sense behind it * * *."
However, the court on rehearing, in a per curiam, said with regard to the duty of the operator of a theatre: "We did not intend to nor did we change the rule that the operators of theatres are held to ordinary and reasonable care in protecting patrons against injuries."
[3] The degree of care owed by the owner of a theatre or place of amusement is similar to that imposed upon a store-keeper as to his customers and invitees.
[4] A storekeeper is not the insurer of the safety of his customers and he need only keep the floors and passageways of his premises in a reasonably safe condition. Farrow v. John R. Thompson Co., 18 La. App. 404, 135 So. 80, 137 So. 804; Thompson Grocery Co. v. Phillips, 22 Colo. App. 428, 125 P. 563; Bloomer v. Snellenburg, 221 Pa. 25, 69 A. 1124, 21 L.R.A., N.S., 464; Langley v. F. W. Woolworth Co., 47 R.I. 165,131 A. 194; Lawson v. Shreveport Waterworks Co., 111 La. 73, 35 So. 390; Bell v. Feibleman Co., Inc., La. App., 164 So. 273; Bartell v. Serio, La. App., 180 So. 460.
Defendants' counsel argues that even if we find that plaintiff slipped and fell on *Page 215 
popcorn there would be no warrant for the affirming of the judgment appealed from. They contend that it is encumbent upon the plaintiff to prove that the theatre owner had actual or constructive notice of the presence of the popcorn on the floor, and the fact that popcorn was present there was not sufficient to rest the burden on defendants to explain how and when it got there. They contend that such showing is a burden imposed on the plaintiff.
The record contains no evidence whatever demonstrating when or under what circumstances the popcorn which caused Mrs. Luthjens' fall came to be on the floor of the arcade, and counsel insist that Paramount-Richards Theatres, Inc., had no actual or constructive notice such as would be necessary to render defendants liable for the consequences of plaintiff's fall. They cite in support of their contention numerous authorities.
In Powell v. L. Feibleman Co., La. App., 187 So. 130, 131, this court passed upon the claim of a plaintiff who was injured by reason of slipping and falling upon a banana peel located in the defendant's department store, and in that case we said: "It must be conceded that a banana peel upon the floor of a department store is potentially dangerous to the patrons of the store, but real or constructive notice of its presence must be proven before the proprietor can be held responsible for the injury * * *. We know of no case in which the proprietor of a store has been held liable for accidental injury to a customer without proof of negligence based upon some act of commission or omission. In this case the plaintiff was seriously injured, as is reflected by the size of the judgment below, but there is no proof that her unfortunate accident was caused by the fault of the defendant or any of its employees. The banana peel was undoubtedly lying upon the floor prior to plaintiff slipping upon it, but we do not know how long it was there nor how it got there. It may have been dropped by another customer a few minutes before Mrs. Powell reached the spot and again, it may have remained there several hours. It is possible that it was on the floor a sufficient length of time to create presumptive notice of its presence so that the failure to remove it was negligence for which this plaintiff might recover, but of that we have no proof and its mere presence upon the floor is not sufficient to cast upon the defendant the burden of showing how and when the banana peel got there. As we have said, the defendant seems to have exercised reasonable care to keep the premises in a safe condition for its customers. In the absence of any showing of negligence plaintiff's suit must fail."
The plaintiff, in Smith v. American Stores Co., 156 Pa. Super. 375,40 A.2d 696, 697, stepped on a piece of paper on the floor, under which paper were carrot tops, which caused her to slip and fall. The defendant company sold meats, produce and groceries at retail. The court said: "In general, in an action arising from personal injury, the burden is on the plaintiff to prove the negligence of the defendant which caused it. And cases involving injury to an invitee of a storekeeper are no exception to the rule; res ipsa loquitur does not apply. This often is a heavy burden on a plaintiff even in a meritorious case. Cf. MacDonald v. Gimbel Brothers, Inc., 321 Pa. 25,183 A. 804. And although under some circumstances the difficulties of proof of negligence may be insurmountable, yet the rule has not been relaxed. A storekeeper is not liable except upon proof of the negligence of his servant or employee, chargeable to him, or of a dangerous condition of which he has had actual or constructive notice. His duty arises no higher than to keep his store in a reasonably safe condition and to remove hazards of which he has actual knowledge or which have continued long enough to charge him with constructive notice of their existence. Chapman v. Clothier, 274 Pa. 394, 118 A. 356; Reay v. Montgomery Ward Co., Inc., 154 Pa. Super. 119,35 A.2d 558."
In Uelentrup v. Switzerland Stores, Inc., Mo. App., 164 S.W.2d 650, 651, the defendant had a vegetable department in its store where it sold vegetables. Plaintiff stepped upon a piece of lettuce leaf, slipped and fell. The lower court rendered judgment in favor of plaintiff. The appellate court, in *Page 216 
reversing the judgment, said: "The law is well settled that a merchant or storekeeper is not an insurer of the safety of customers invited to his store, nor does his duty to customers rest upon the same basis as that of a master to a servant or of common carriers to passengers. 'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.' 20 R.C.L. § 52, p. 56; McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S.W.2d 555. And following this basic principle our Supreme Court has stated the rule in the case of Robinson v. Great Atlantic Pacific Tea Co., 347 Mo. 421, 147 S.W.2d 648, 649, as follows: 'The rule is stated as follows: "The applicable law, as announced by the courts of this state, is that a storekeeper is not liable to his invitee for injury resulting from a dangerous and unsafe condition of the store unless it is shown that the store-keeper had knowledge, actual or constructive, of such condition in time by the exercise of ordinary care to have remedied the condition before the occurrence of the injury. McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S.W.2d 555; Broughton v. S. S. Kresge Co., Mo.App. 26 S.W.2d 838; Hogan v. S. S. Kresge Co., Mo.App., 93 S.W.2d 118; Varner v. Kroger Grocery Baking Co., Mo.App., 75 S.W.2d 585; Hubenschmidt v. S. S. Kresge Co., Mo.App., 115 S.W.2d 211; Monsour v. Excelsior Tobacco Co., Mo.App., 115 S.W.2d 219; Scott v. Kline's, Inc., Mo.App., 284 S.W. 831." Smith v. Sears, Roebuck Co., Mo.App., 117 S.W.2d 658 loc. cit. 661.' "
In Edwards v. F. W. Woolworth Co., 129 Conn. 245,27 A.2d 163,164, there was a jury verdict for the plaintiff which the trial court set aside. From such decision plaintiff appealed, and the appellate court found no error. It said: "When the plaintiff entered about noon there was a crowd about the lunch counter. The floor was littered with broken cookies, a piece of bread, a broken, dirty roll and the like. She turned to enter an aisle of the store, and when she was about five feet from the place where the frankfurters were sold, she slipped and fell. After falling she looked around and saw a dry, dirty frankfurter skin on the floor which she claimed caused her fall. There was no evidence as to the length of time the skin had been on the floor, nor any evidence that anything else on it would make it slippery. We agree with the trial court that the jury could not reasonably have concluded that the skin had been on the floor in a position to cause danger to customers a sufficient length of time so that the defendant should in the exercise of a reasonable inspection have discovered it."
The case of Evans v. S. S. Kresge Co., 290 Mich. 698, 291 N.W. 191, 192, was a matter in which plaintiff slipped on a piece of fatty meat in the defendant's premises where barbecue and hot dog sandwiches were sold. The court said: "Plaintiff, in order to recover damages, had to show that she was injured by reason of the failure of the defendant in the instance at bar to maintain reasonable supervision relative to keeping the floor clear of particles of food or other substances likely to cause customers to slip thereon. This the plaintiff did not establish, and the difficulty in doing so should not lead this court to make bad law."
A case similar to the instant one is Morgan v. American Meat Co., Ohio App., 46 N.E.2d 669, 672. There a clerk in defendant's store was passing out olives to customers. Plaintiff stepped on something, slipped and fell to the floor. While on the floor, she noticed an olive partially eaten where her foot had stopped, and a wet streak where her foot had slipped. There were also other olive pits about the spot where she fell. The court, in affirming a judgment for defendant upon a directed verdict, said:
"In the instant case there is no evidence at all that the olive pits were dropped on the floor by an employee of the defendant. The inescapable conclusion that must be drawn from the testimony is that the olive pits were dropped by customers.
"There is also no evidence at all in the record that the defendant had actual knowledge *Page 217 
that the olive pits were on the floor, or that they had been there for such a length of time as to constitute constructive notice. The only possible way in which it could be said that defendant had notice of the presence of the olive pits on the floor would be to say that dropping them there by the customers was a natural and probable result that, in the exercise of ordinary care, the defendant should have anticipated as a result of giving away olives. With this contention we do not agree. The giving away of articles of food in grocery stores, as samples, has long been a recognized method of advertising and there is no rule of law which will charge the merchant with knowledge that the customers will dispose of what remains of the sample in such a way as to make the store dangerous to other customers."
Many other cases to the same effect are cited by counsel. Robinson v. Great Atlantic Pacific Tea Co., 347 Mo. 421,147 S.W.2d 648; Shea v. First National Stores, 63 R.I. 85,7 A.2d 196; Beach v. S. S. Kresge Co., 302 Mass. 544, 20 N.E.2d 409; Kroger Grocery Baking Co. v. Spillman, 279 Ky. 366,130 S.W.2d 786; F. W. Woolworth Co. v. Ney, 239 Ala. 233,194 So. 667; Kroger Grocery Baking Co. v. Dempsey, 201 Ark. 71,143 S.W.2d 564; O'Brien v. H. L. Green Co., 128 Conn. 68,20 A.2d 411; Cook v. Kroger Baking Grocery Co., 65 Ga. App. 141,15 S.E.2d 531; Brown v. S. H. Kress Co., 66 Ga. App. 242,17 S.E.2d 758; Smith v. Safeway Stores, Inc., Tex. Civ.App.,167 S.W.2d 1044; Miscally v. Colonial Stores, Inc.,68 Ga. App. 729, 23 S.E.2d 860; Starberg v. Olbekson, 169 Or. 369,129 P.2d 62; Zerbe v. City of Springfield, Ohio App., 60 N.E.2d 793; Bosler v. Steiden Stores, 297 Ky. 17, 178 S.W.2d 839; Montgomery Ward Co. v. Lamberson, 9 Cir., 144 F.2d 97.
[5, 6] The holdings in the cited cases appear to constitute a practically insuperable barrier to the collection of damages by injured individuals who may fall in stores or other localities where they are present as invitees. However, we know of no case in which the proprietor of a store has been held responsible for injuries sustained by a customer in the absence of proof of some negligence. In the present case there is no evidence indicating that any of the employees of the Saenger Theatre were at fault, nor has it been shown that the popcorn was on the floor a sufficient length of time to charge Paramount-Richards Theatres, Inc., with notice of its presence so that their failure to remove it would constitute negligence for which the plaintiff should have the right to recover. The burden of making such showing was with the plaintiff. The operator of the theatre appears to have used reasonable care to keep its premises in safe condition, and the law requires of it nothing beyond that. The testimony shows that it had a complement of several porters and maids whose duties it was to walk through the arcade every ten minutes or so and pick up any trash, cigarette butts or debris which was found to be on the floors, and no evidence can be pointed to in the record evincing that anything other than reasonable care was used by the management of the theatre to keep its premises in a condition of safety.
The judge of the district court gave written reasons for judgment, in which he stated that the popcorn was "germane" to the business of the Saenger Theatre, and that the presence of popcorn on the floor renders the theatre operator liable unless it can excuse itself in fact and in law. However, our attention has not been directed to any authorities which would support this ruling and we know of none. The cases cited above hold otherwise.
For the reasons assigned, the judgment appealed from is reversed, and the demands of plaintiff-appellee are dismissed at her cost.
Reversed. *Page 218