## BRADY v. AVENUE THEATRE COR-PORATION et al.

### No. 17203.

Court of Appeal of Louisiana. Orleans.

March 25, 1940.

Rehearing Denied April 22, 1940.
Writ of Certiorari Denied May 27, 1940.

Miller, Bloch & Martin, of New Orleans, for appellants.

Vosbein & Christensen and Edward Lombard, all of New Orleans, for appellee.

JANVIER, Judge.

Mrs. John T. Brady alleges that she sustained personal injuries on the evening of December 28, 1937, while a patron of Avenue Theatre Corporation, in its Avenue Theatre in New Orleans, when the cháir or seat in which she attempted to seat herself "broke, collapsed and fell instantly," with the result that she "was wedged between the arms of the broken chair and the chair directly in front of her" in such manner that she could not extricate herself without assistance. She claims that, as a result of the said accident, she sustained a contusion of the lower abdomen and back, a severe sprain of the left ankle and contusions and brush burns of both legs. She charges that the officers or the servants of the said theatre knew, or should have known, that the chair was defective and was not in proper condition, and that the falling of the said seat was the direct, natural and probable consequence of the failure of the officers or servants of the said theatre to properly inspect the seats and that this failure constituted neg-

ligence on their part. She asserts that her occupation is "private professional nursing", from which she receives her livelihood, and that, as a result of her injuries, she has lost fifteen weeks of professional employment.

She avers, also, that London & Lancashire Indemnity Company of America was the insurer of the said theatre company and she seeks solidary judgment against the theatre corporation and the insurance company in the sum of $4,439.95.

The two defendants admit that the principal defendant conducts a moving picture theatre and that the indemnity company had issued to it "a policy insuring against the liability imposed by law for personal injuries sustained by patrons of the theatre within the limits and subject to the terms and conditions of said policy * * *". For lack of information defendants deny all the allegations concerning the occurrence itself and they specifically deny that the officers or employees knew, or should have known, of the defective condition of the chair or seat in question, and they aver further:

" * * * that the said chairs were in apparent good order and condition and had no defect which could be discovered by inspection; that no such injury had happened before; that said chairs were the property of the owner of the theatre, Mr. Landgridge, and were of the kind and quality customarily used in such places; that Avenue Theatre used due care in inspecting and repairing the chairs in said theatre, and that if one of them broke when plaintiff sat in it, the cause was a latent defect not discoverable by inspection, or by reason of the act of some person who may have tampered with the same; and respondents deny any negligence in the premises on the part of the Avenue Theatre Corporation."

In the court below there was judgment for plaintiff against both defendants solidarily in the sum of $650, and both have appealed devolutively and suspensively.

That the accident occurred, there can be no question. There is no contradiction of the evidence submitted on behalf of plaintiff which shows that, as she attempted to place herself in the seat, it gave way and she fell and was wedged into it and sustained certain injuries.

■ We deem it to be well settled, as a matter of law, that, though the operator of a theatre is not the insurer of the safety of its patrons, nevertheless, where injuries are sustained as the result of causes of which the injured patron could not be expected to have knowledge or information, the burden of explaining such causes and of exculpating itself from fault rests upon the said theatre operator. Wilson v. Iberville Amusement Company, Inc., La. App., 181 So. 817; Cavaretta v. Universal Exchanges, La.App., 182 So. 135; Cavicchi v. Gaiety Amusement Company, La.App., 173 So. 458; Lonatro v. Palace Theater Company, 5 La.App. 386.

McKelvy v. Capitol Amusement Company, La.App., 159 So. 143, and Jackson v. Saenger-Ehrlich Enterprises, Inc., La.App., 175 So. 688, are also authority for the legal doctrine that the operator of a theatre is not liable as an insurer, but is under the obligation of freeing itself from the charge of negligence.

■ It follows from this principle that, if it can be shown that an accident has resulted from some latent defect, which a proper inspection would not have disclosed, such proof will relieve the theatre operator of liability.

It is on this principle that defendants rely and it was their purpose to show that the accident here resulted from a latent defect in one of the "lugs" upon which the seat in question, when lowered into position, should have rested. They attempted to show that this defect was latent by evidence to the effect that, just before the commencement of the first performance on each evening, all seats are inspected, and that on the evening in question this inspection was made without discovery of any defect. And they further show that a disinfectant was spread under all the seats and on all the lugs which hold the seats in position and they argue from this premise that, had there been a discoverable or patent defect in the lug in question, it would have manifested itself.

We find some merit in this argument and yet we cannot avoid the impression that, had the broken lug been exhibited in court, it could have been determined with much greater certainty whether the defect was latent, or could have been discovered on reasonably careful inspection.

It is stated that the break appeared to be a fresh one and possibly it was, but an exact description of the break is not given us. We are told the lug consists of a piece

of metal. If this means that it was a solid piece of metal and that it broke through some inherent defect, such as a sand hole, or an air hole, surely this would have been observable had the lug been presented in court. But the evidence does not definitely show that the metal itself broke. If the break was the result of wear, surely we could not sustain the defense that the defect was a latent one. These facts could have been ascertained clearly and definitely by the production of the lug.

Defendants contend that the failure to produce the lug was not intentional on their part. They explain its absence by the statement that, when it was replaced by a new one, they did not know that any personal injuries had been sustained, and therefore, attaching no importance to the broken lug, disposed of it.

We can quite well understand that, if the employees of the theatre were told only that a seat was broken and did not know that anyone had been injured, they might, when repairing the seat, have thrown away the broken lug, and it is true that Mr. Condon, the floor manager of the theatre, says that he was told that a seat was broken in the middle aisle and was not told that anyone had been injured. He states that he saw Mrs. Brady when she left the theatre and that she "never looked any different to me".

Nevertheless it seems very evident that other employees were well aware not only of the fact that the seat had been broken, but of the further and much more important fact that Mrs. Brady had been hurt. She says that after she was injured, "the large stout lady in the back, I don't know her name, the lady that owned the show, or in charge of the show, volunteered to send me home in a taxicab". Surely, this offer would not have been made had the lady in question not been told that Mrs. Brady had received injuries.

Miss Brady, the daughter of plaintiff, says that after the accident she "went to the rear of the show to call the lady and gentleman back there, to come to help her up; when he came there all he did was to put a wire across there * * *".

Since there can be no doubt that Mrs. Brady did sustain injuries, it seems most improbable that she reported the breaking of the seat to Mr. Condon and yet did not make some report concerning her injuries. We conclude that Mr. Condon knew that she had been hurt and we cannot understand why he did not retain the broken lug to show that he was free from fault since he must have known that the very best evidence to show that he had not been careless in his inspection would have been the lug itself, for it would have entirely freed him from blame had he been able to show that the break resulted from a latent defect.

As we have said, had the evidence shown the defect to be a latent one, the defense, as a matter of law, would have been good, since a reasonably thorough inspection would not have disclosed its defective condition. But, since the burden of showing this was placed upon the defendants and they have not successfully borne that burden, we must conclude that there is liability for such injuries and losses as the plaintiff has sustained.

Defendants complain that the amount allowed below ($650) is excessive.

Plaintiff's physician states that she came to him "suffering with her left foot, pain in lower abdomen and back, skinned shin on both legs". He found it necessary that she visit him on nine different occasions. He strapped her back and made her wear a bandage on the left foot. It developed that the left ankle had been sprained and the physician employed by defendant, on examining her fourteen months after the accident, found, by means of an X-ray, that there was still a "thickening of the left ankle". He said that he could not say how much longer that condition would continue.

Mrs. Brady said that her back hurt her intensely and that the ankle also pained her considerably and that even on the day of the trial her foot was still swollen and still "hurts me very much". Her physician said that he rendered no bill because of personal friendship.

It is very evident that she sustained a rather severe sprain of her ankle and that this incapacitated her for some time. She was obviously prevented from attending to professional calls for a period of approximately three months. Concerning these professional calls she testified as follows:

"A. I nurse; I am a nurse by profession; I nurse for several of the best doctors in town, Doctor George Bel and Doctor Metz and Doctor Chamberlin and Doctor Sam Hobson; at that time I was on a case for Doctor George Bel, who is now at the

hospital; I was nursing one of his patients, and was obliged to put another nurse in my position; and since then I have had several very good calls that I haven't been able to take, because if I stand on my foot any length of time it hurts me too much to take a case.

"Q. Did you lose any engagements as nurse as a result of this accident? A. Yes, sir; I was called twice to the Hotel Dieu, twice by Doctor Sam Hobson and once by Doctor Chamberlin, cases I wasn't able to take; you see, there is still a swelling in the foot, and if I stand any length of time, as one has to do in the sickroom, it is very painful."

She gives no specific detail as to the length of time during which she would have been employed during anyone of the cases referred to, nor does she state the amount she could have earned for each case, or by the day. And yet it seems very clear that she sustained a substantial loss in this regard.

In the matter of Crozat v. Toye Brothers Yellow Cab Company et al., La.App., 145 So. 60, 61, we found a claim based to some extent on similar circumstances. There we found a professional man — a dentist — prevented by injuries from attending to the patients, who, he testified, would no doubt have called him. We allowed in that case a substantial recovery for the loss of earnings.

In cases of this kind the important question for determination is whether there is sufficient certainty in the proof. We said: "* * * when it has been definitely proven that a decrease in earnings has resulted from inability to exercise personal effort or skill towards the production of the income and the amount of such loss has been established with reasonable certainty, an award should be made, but, when the claim for profits is interwoven with other factors, such as invested capital, industry, and skill of others whose ability and zeal contribute to the result, such profits may not be the subject of an award."

Here there is no question of invested capital or the skill of others which must be considered. Plaintiff states that she had always been able to earn her own living from her efforts in her profession and that, for the period mentioned, she could do nothing whatever. Though she is somewhat indefinite and uncertain, we think, from what she says, that it is very

clear that her professional earnings sustained a substantial loss. Surely, also, a sprained ankle, the results of which persist for a period of more than a year and which causes constant pain, entitles the injured party to a recovery approximating $300 or $400. We realize that the proof is indefinite and uncertain, but we feel that, considering her suffering and injuries as a whole and considering her loss of earnings in connection with the suffering and injuries, the amount awarded constitutes not more than reasonable reimbursement.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellants.

Affirmed.