JONES, Judge.
This is a suit for damages caused by an intersectional collision between a 1953 International pickup truck operated by Mrs. Rosa Lea Williams and in which were riding A. D. Williams, her husband, and Keith, David and Billy Williams, three of their minor children, which before the accident was traveling in an easterly direction on Lockhart Road (the right-of-way road) in Livingston Parish, and a Ford pickup truck operated by James C. Parker, approaching the intersection on Cockerham Road, the inferior road, while traveling in a northerly direction.
A. D. Williams instituted suit for past, present and future pain and suffering and medical expenses and other damages occasioned by himself and on behalf of his minor sons, Keith and David, for pain and suffering, and on behalf of his minor son, Billy, for pain, suffering and disfiguration. Mrs. Rosa Lea Williams, a co-plaintiff, sought damages for pain and suffering arising from injuries sustained by her in the accident. Suit was filed against Parker and Old Colony Insurance Company, his liability insurer. From judgment in favor of plaintiffs, the defendants have appealed and plaintiffs have answered the appeal seeking an increase in the respective awards.
At the intersection where the accident occurred, there was a stop sign located on the corner facing northbound traffic on Cockerham Road. Defendant Parker was traveling in a northerly direction on this road. Lockhart Road is blacktopped and Cockerham Road where it intersects Lock-hart Road is gravel. The view of the intersection was not obstructed and defendant could have seen the approaching Williams vehicle had he been maintaining a proper lookout. The accident occurred at about 10:15 A.M. on November 29, 1958. It was a clear and very cold winter day.
The defendant, a resident of Livingston Parish, was acquainted with the intersection and was aware of the location of the stop sign. He testified that as he approached the intersection he gradually slowed down as if to stop but, as he remembered, did not bring his truck to a standstill before entering the intersection. He stated that he looked in the direction from which the Williams automobile was approaching but failed to see it. Mrs. Williams testified that she first noticed the Parker vehicle when she was approximately the distance of one block from the intersection ; that the Parker truck when she first saw it was approximately the same dis *713 tance from the intersection; that when she first saw the Parker pickup both vehicles involved were traveling at the rate of 40 to 45 miles per hour; that she removed her foot from the accelerator upon seeing the Parker truck but resumed speed when she noticed that Parker was slowing down as if to obey the traffic signal. The Williams vehicle was approximately two car lengths from the Parker pickup when Mrs. Williams first noticed the Parker vehicle coming into her path and, although she swerved to her left, Mrs. Williams was unable to avoid the collision.
Defendants concede that Parker was negligent in ignoring the stop sign but contend that plaintiffs are precluded from recovering for the injuries sustained due to the contributory negligence of Mrs. Williams, which they contend is imputable to Mr. Williams.
Under ordinary circumstances, right-of-way traffic is entitled to approach and enter an intersection even if traffic is observed approaching from an inferior street because the superior traffic is entitled to rely on the assumption that those approaching it will respect a stop sign which the motorist knows is located there. If, on the other hand, the motorist driving on the right-of-way road or street sees or in the exercise of due care should see that the other vehicle will neglect to make the stop required by law, then the right-of-way motorist is under a duty of stopping if by the exercise of reasonable care on his part the accident could be avoided at the time he saw or should have seen the other vehicle violating its legal duty to stop before entering the favored traffic lane. See Gautreaux v. Southern Farm Bureau Cas. Co., La.App. 1 Cir., 83 So.2d 667, 669, and the cases therein cited.
In the above cited Gautreaux case, we stated as follows:
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the side-streets, but instead concentrate most of their attention on the path ahead, relying on their legal ‘right of way’. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
Each case of this type must be decided on its peculiar set of facts and circumstances. The intersection wherein the collision occurred was open and visibility was unobstructed. Mrs. Williams stated that she observed Parker approaching the intersection from some distance and it appeared to her that he was slowing his vehicle so as to obey the stop sign. The following is pertinent testimony by Parker concerning his actions as he approached the intersection:
“Q. How long have you lived in Livingston Parish? A. Nine years.
“Q. As you approached this intersection did you know that there was a stop sign there directing you to stop ? A. Yes.
“Q. Did you slow down for the stop sign? A. I did.
“Q. Did you actually stop for the stop sign? A. I don’t know. I don’t think I actually come to a dead-still stop, in other words, I slowed down to what I thought was almost, in other words, I got on my brakes and slowed *714 down to what I thought was a stop and gave it some gas, too, as I began to cross the road.”
From the defendant's testimony, it is evident that Mrs. Williams was falsely led to believe, and justifiably so, that Parker would stop his truck and yield to the approaching Williams vehicle. However, as the Williams vehicle entered the intersection, Parker did not stop his truck but “gave it some gas” and moved into the path of Mrs. Williams. We feel that the trial court was eminently correct in finding that Mrs. Rosa Lea Williams was guilty of no contributory negligence and that the negligence of James C. Parker in failing to yield the right-of-way, failing to see what he should have seen, and failing to maintain a proper lookout was the sole and proximate cause of the accident.
Dr. Frank C. McMains, an orthopedist, examined A. D. Williams shortly after the emergency examination in the Baton Rouge General Hospital. His examination revealed that Mr. Williams had suffered abrasions about both knees and multiple bruises and abrasions of the face and body. Mr. Williams was given first aid and sent home but was seen by the doctor on several occasions subsequent to the accident primarily due to pain in the left knee. He complained of shooting discomfort on the lateral part of the left knee and had some swelling and stiffness in this knee. Dr. McMains saw Mr. Williams the last time on July 20, 1959, and although he had a full range of motion, and there was no liga-mented instability, the doctor noted a small traumatic neuroma over the superficial patella nerve which was sensitive to the patient. He felt that there was no permanent disability, but the doctor was of the opinion that the neuroma would cause Mr. Williams considerable difficulty and pain due to his total blindness and would in all probability result in his bumping his knees more often than individuals who are not so handicapped. However, he felt that the neuroma could be removed by minor surgery under local anesthesia without the necessity of more than two days hospitalization.
The District Court awarded Mr. Williams $2,000 for his pain and suffering. We have no doubt that the knee injury has caused him considerable pain and suffering and that frequent bumping of the knee due to his blindness has caused him much consternation. However, we do not consider it equitable to compel payment of substantial damages by defendants for past and future pain which it is reasonable to assume could have been alleviated by minor surgery under local anesthesia. Jenkins v. American Automobile Ins. Co., La.App., 111 So.2d 837. We feel that the award granted by the District Court is excessive and that $1,500 is adequate compensation for the injuries sustained by Mr. Williams. See Theriot v. Marquette Cas. Co., La. App., 111 So.2d 799, wherein plaintiff was awarded $1,000 for abrasions of the forehead, numerous contusions and a deep laceration of the right knee requiring sixteen stitches.
The lower court awarded Mr. Williams the sum of $929.29 for the loss of his wife’s earnings as a result of the injuries she sustained in the accident. Defendants contend that the award should be reduced to $184.53. Plaintiffs suggest that the award should be increased to $957.28 because of an error in calculation made in the District Court. Mrs. Williams was employed by the Baton Rouge General Hospital as a nurse in the orthopedic and polio rehabilitation ward prior to the accident. She testified that for approximately six months before the accident she had been working on a part-time basis due to the fact that she and Mr. Williams were in the process of moving to a new residence during this period. She also stated that a couple of days before the accident she had commenced work at the hospital on a full-time basis and would, in all probability, average twenty-one days per month at $13.84 per day; that due to residual pain *715 from a fractured patella or kneecap of the right knee, she was only able to work eighty days during the period from the date of the accident until discharged by Dr. Mc-Mains as capable of returning to work in the month of July, 1959. Had she worked twenty-one days per month during this period, she would have worked a total of 147 days, or 67 days in addition to what she actually worked. Defendants contend that recovery for loss of Mrs. Williams’ earnings should be disallowed because her testimony to the effect that she was employed full-time at the time of the accident was not corroborated by testimony and records. In support of their contention, defendants cite Stevens v. Dowden, La.App., 125 So.2d 234; Jenkins v. Audubon Ins. Co., La.App., 110 So.2d 221; Camus v. Bienvenue, La.App., 91 So.2d 99; Vest v. State, La.App., 90 So.2d 896; Rhymes v. Guidry, La.App., 84 So.2d 634; Thomas v. Stewart, La.App., 29 So.2d 604; and Dickson v. Yellow Cab Co. of Shreveport, La.App., 61 So.2d 230. The general principles applicable to review of awards for claimed loss of earnings were summarized in Stevens v. Dowden, supra, as follows [125 So.2d 237]:
“The plaintiff’s detailed and uncon-tradicted testimony as to such losses may by itself constitute sufficient proof, if reasonable and if so accepted by the trial court, although the better practice is to introduce corroborating evidence. (Cases cited.) But an uncorroborated general estimate by a plaintiff as to his loss of earnings or profits is not sufficient proof of such loss, where corroborative evidence is shown to be available and is not produced; and a trial court’s award therefor based only upon such proof may be disallowed by the reviewing court.” (Cases cited.)
For this type loss the important question for determination is whether there is sufficient certainty in the proof. See Brady v. Avenue Theatre Corporation, La.App., 194 So. 721, wherein award for loss of earnings of nurse was sustained. Nursing, not being affected by the elements, is a constant and steady employment and the District Court was apparently impressed with Mrs. Williams’ definite and concise testimony as to the average days she would work per month on a full-time basis and the salary she would receive therefor. It is to be noted that in the above mentioned cases relied upon by defendant the respective plaintiffs who sought awards for lost earnings were generally self-employed and could only make vague and general estimates concerning their losses. The defendants herein also contend that it was against the best interests of Mr. and Mrs. Williams for the latter to work full time as the amount of Mr. Williams’ welfare check would decrease as Mrs. Williams’ earnings increased. Both Mr. and Mrs. Williams testified that, of necessity, they had to rely upon welfare assistance and they desired to earn their living independent of such assistance. Mr. Williams is an ordained minister and Mrs. Williams is a graduate of Louisiana College with a major in Bible, and we do not feel that the District Court erred in accepting their testimony as true. To the contrary, we admire their desire to regain and maintain their economic independence. We note that the District Judge erred in computing the lost earnings of Mrs. Williams in that the loss of 67 days at $13.84 a day amounts to $927.28. Accordingly, the award should be so reduced.
All special damages allowed Mr. Williams by the District Court are as follows:
Dr. F. C. McMains $ 345.00
Dr. Leslie Hobgood 109.00
Dr. W. R. Schaffarzick 125.00
Baton Rouge General Hospital 676.95
Seale Ambulance Service 60.00
Drugs 12.56
Anesthesiologist 25.00
Deductible portion of collision policy 50.00
Loss of salary of Rosa Lea Williams 929.29
Total $2,332.80
*716 In addition to the $2.01 correction above made in the salary of Rosa Lea Williams, the medical allowed for Dr. F. C. McMains should be reduced to $300 as his charges included $45 for medical reports rendered to plaintiffs’ attorney, leaving the award to Mr. Williams for special damages in the amount of $2,295.79.
Mr. Williams claimed $500 for the loss of ten registered shepherd puppies which he alleges froze to death while Mrs. Williams was hospitalized. His testimony is to the effect that the deaths of these dogs would not have occurred had Mrs. Williams been at home to attend to them. His testimony reflects that the evening before the puppies died he and his father examined them in their dog house and they were in satisfactory condition. We feel that the District Court was correct in disallowing this claim in that such damages are too speculative to permit recovery. It is certainly possible that the puppies would have frozen to death even if Mrs. Williams had been at home, hut, further, the plaintiff is charged with the responsibility of minimizing his losses, as it would have been easy indeed for his father to have provided adequate protection for the dogs against the cold. For these reasons, we do not believe that any damages should be awarded for this item.
Mrs. Williams sustained lacerations over the left knee with an underlying un-displaced fracture of the patella or kneecap, along with numerous abrasions and contusions over her entire body. She was immobilized in a walking cylinder and confined to the hospital for ten days. She was ambulatory with the assistance of crutches and the cast was not removed from her leg until three weeks after the accident. Her injuries were very painful and several injections into the knee area were required because of recurrent pain and swelling in the knee. She was discharged by Dr. Mc-Mains in July, 1959, and although he felt that she had made a very satisfactory recon ery from her injuries, there was indication of thickening over the lower portion of the patella which he concluded was a soft tissue reaction. Dr. McMains did not feel that she had suffered any permanent disability although he stated that due to the trauma the left knee was not in as good condition as it was prior to the injury. At the trial, Mrs. Williams stated that intermittently she still suffered from pain in her left knee. The lower court awarded her $7,500 for her pain and suffering. Although we recognize that the injuries sustained by her were painful, we feel that the award was excessive and should be reduced to $4,500. See Soileau v. Manuel, 109 So.2d 502, 1 Cir. (1959), wherein plaintiff suffered a fractured patella which caused a permanent limp, contusion of the eyeball, fracture of the frontal bone on his face, along with a concussion and loss of memory. There also remained a scar extending from the bridge of his nose up to and over the left eyebrow. We awarded the plaintiff $5,000 for his pain and suffering. Defendants’ counsel cites several other cases in support of their contention that the awards should be substantially reduced. Of course, in none of the cases cited were the injuries identical with those suffered by Mrs. Williams. There is no standard for measuring damages to be awarded a plaintiff for personal injuries. Each case must be determined from its own facts, and we feel that an award of $4,500 for the pain and suffering of Mrs. Williams is just and equitable.
Billy Lee Williams sustained fractures of the tibia and fibula of the right leg, a cerebral concussion, second and third degree burns over the lumbar area, and minor internal injuries. Dr. Hobgood testified that he had examined Billy and noted that the second and third degree burns over the lumbar area extended into the right flank and then onto the buttocks. Dr. W. R. Schaffarzick, a general surgeon, testified that a painful scar, known as a keloid formation, developed over the burn and that it caused considerable discomfort due to the fact that it was at Billy’s beltline. *717 He stated that on April 20,, 1959 the scar was removed at Baton Rouge General Hospital. He examined the scar at the trial and noted the presence of a little more keloid. Although such formations have a tendency to resume their forms, he did not feel that it would get any worse than it was at the date of the trial. $3,500 was awarded by the lower court for the pain and suffering sustained by this child. We feel that $3,500 is inadequate to compensate for the pain and suffering this boy has undergone and should be increased to $4,500.
David Williams, an eight year old boy, sustained mild abrasions and bruises over his body, along with lacerations of the chin which required sutures. He was not hospitalized. The trial judge awarded $1,000 for the pain and suffering of this child. His injuries were not considered serious and we feel that the award should be reduced to $750.
Keith Williams, age five years, received multiple abrasions of the face and body and numerous bruises of the body. He was examined by Dr. McMains at the emergency room of Baton Rouge General Hospital and discharged after the bruises and abrasions were cleaned up. We feel that the award given by the District Judge-in the sum of $500 for this child’s pain and suffering is excessive. The sum of $300 impresses us as being appropriate under the cirmcumstances and it will be .allowed.
For the reasons assigned, it' is now ordered, adjudged and decreed that the judgment appealed from be amended in that there be judgment in favor of plaintiff, Rosa Lea Williams, and against defendants, James C. Parker and Old Colony Insurance Company, in solido, in the amount of $4500 together with legal interest from judicial demand until paid.
It is further ordered that the judgment .appealed from be amended in that there be judgment in favor of plaintiff, A. D. Williams, individually and as head and master of the community of acquets and gains, in the amount of $3,795.79, and as administrator of the estate of his minor son, Billy Williams, in the amount of $4,500; as administrator of the estate of his minor son, David Williams, in the amount of $750; and as administrator of the estate of his minor son, Keith Williams, in the amount of $300, and against defendants, James C. Parker and Old Colony Insurance Company, in solido, together with interest on all sums allowed at the legal rate from date of judicial demand until paid.
It is further ordered that the judgment appealed from be, and it is hereby, in all other respects, affirmed.
Affirmed, as amended.