136 So.2d 463 (1962)
Albert D. DARK et al., Plaintiffs Appellees,
v.
John B. BRINKMAN et al., Defendants Appellants.
No. 425.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1962.
*464 Simon, Carroll, Fitzgerald & Fraser, by Richard A. Fraser, Jr., Shreveport, for defendants-appellants.
Gerard F. Thomas, Jr., Natchitoches, for plaintiffs-appellees.
Cook, Clark, Egan, Yancey & King, by Sidney E. Cook, Shreveport, for plaintiffs appellees.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
This is a tort suit in which the trial court awarded damages in the respective amounts of $13,275.29 to the plaintiff husband and $7000 to the co-plaintiff wife for their personal injuries. The sole issue upon this appeal by the defendants, the tortfeasor Brinkman and his liability insurer, concerns the amount of such awards. The defendants-appellants, of course, contend that they are excessive; and, by answer to the appeal, the plaintiffs pray for an increase in them.
Following perfection of the appeal the plaintiff husband died, and his heirs were substituted as plaintiff for him. See Thomas v. Checker Cab Co., 229 La. 1079, 87 So. 2d 605. For convenience, however, we will in the following opinion refer to him as "the plaintiff Dark" and to his spouse as "the plaintiff wife".
These plaintiffs sustained their personal injuries in an accident of October 8, 1959 which was caused by the obvious negligence of the defendant Brinkman. The Dark vehicle was slowed with proper signal to the speed of a slow-moving tractor which was preceding it, when it was struck from the rear with such force that the front bolts of the front seat of the Dark automobile were sheared from their mountings. The plaintiffs were examined immediately after the accident by a local physician in Natchitoches and, although hospitalization was recommended, they nevertheless proceeded back to their home in Edmond, Oklahoma, because they could not remain away longer from their two young children at home, from whom they had been absent for about two weeks.
The record reflects that both of the plaintiffs suffered fairly serious personal injuries with permanent residuals.
Our learned trial brother correctly stated that the trier of fact's function to determine the awards for personal injuries under these circumstances to be as follows: "In awarding of damages to compensate these plaintiffs in their injuries, pain and suffering, and disability, which latter includes the diminution of activity in the whole of their life activities, are to be considered. Unfortunately, there is no certain and easily definable scale or measure to use. Whatever is finally determined as the amount to which they are entitled, it is, in part at least, arbitrary. Our law does not admit of exemplary or punitive damages, and the Court is necessarily limited to what it feels is justified as compensatory. No two cases are exactly alike, and too, no one case can be said to be controlling in any other given case. The burden is on the Court to award an amount which is feels does justice to *465 both the injured claimant and to the tort feasor."
The principles applicable to the appellate review of awards for personal injuries were recently summarized in these words: "The award of damages for personal injuries is of necessity somewhat arbitrary and varies greatly with the facts and circumstances of each case; it is largely left to the discretion of the trial court, the award by which should ordinarily not be disturbed; LSA-Civil Code, Article 1934(3); Franklin v. Arkansas Fuel Oil Company, 218 La. 987, 51 So.2d 600; McGee v. Yazzo & M. V. R. Co., 206 La. 121, 19 So. 2d 21. However, this is somewhat qualified by a doctrine generally announced similarly to the statement found in Thomas v. Great American Indemnity Company, La. App. 2 Cir., 83 So.2d 485, at page 487 as: "Each case is to be determined upon its own facts, with the desire, however, for the attainment of some degree of uniformity in cases involving similar injuries and disabilities." Humphries v. Delta Fire & Cas. Co., La.App. 1 Cir., 116 So.2d 130, 131.

1. Plaintiff Albert Dark.
Aside from general bruises and contusions about the head and body and a lumbar straininjuries which were of a transitory nature and which, although painful for a short period of time, were cured without residual several weeks after the accident, the plaintiff Dark sustained a serious knee injury in the accident. This consisted of a torn cartilage, also denominated as a ruptured medial meniscus, of the right knee and the traumatic formation of a Baker's cyst, a lemon-sized cystic mass underlying the knee joint. This injury caused pain upon use of the right leg, producing a limp and an inability to climb or to bear his full weight upon the injured joint, and, according to the medical testimony, produced a permanent disability of 25 to 30% of the right limb. Locking and swelling of the knee result from overuse of the right leg, and plaintiff Dark is occasionally forced to undergo complete bedrest for a day or so to receive relief. This disability could, however, be to a large extent relieved by a major operative procedure involving surgical repair of the torn cartilage and removal of the cystic mass; if it were, the permanent disability would be reduced to about ten per cent, a percentage mostly representing the slightly lessened longevity of full use of the knee and the possibility of future complications.
At the time of the accident, the plaintiff was a safety engineer employed by a major oil company at a salary of $750.00 per month. Because of the knee injury, he could only perform about fifty per cent of his duties, since he could not climb and had to avoid prolonged use of the injured member. After the accident, he resigned from his position, not because of the injury but because he did not wish to accept a transfer to Ohio. With the present serious permanent disability of his knee he cannot be employed in the field of his experience or in any similar high-paying position for which he is qualified; but, if the knee disability were diminished by the recommended surgical repair, he could successfully return to such employment, despite the theoretical slight partial permanent disability.
Plaintiff Dark also contends that, as a consequence of the accident and the consequent worries and tension during the following months, he suffered a heart attack about a year after the accident. We find that the trial court correctly concluded, however, that the preponderant medical opinion does not prove any causal relationship between the after-effects of the accident and the heart condition manifesting itself a year after the accident.
The trial court awarded ten thousand dollars to the plaintiff Dark for his personal injuries at the time of the accident and thereafter, principally being for the right knee injury, the pain and suffering and complications resulting therefrom including the formation of the Baker's cyst, the *466 limitation of activities during fourteen months prior to trial, and the estimated permanent disability residual after the recommended surgery was performed. (Included also in the award was the pain and suffering incident to the surgery.)
The trial court thus took into consideration the circumstance that the permanent crippling, undoubtedly entitling the plaintiff to a far greater award, could be reduced by surgery customarily done to relieve such a disability, unaccompanied by any substantial hazard to the injured plaintiff; the award was thus made upon the basis of the reduced disability which with reasonable expectation could be accomplished by undangerous and customary remedial surgery, on the theory that the award should be based upon the reasonable minimization of the damages by the plaintiff. The trial court also additionally awarded the plaintiff damages of $2,750.00, the estimated cost of the surgery and of the loss of earnings during the recuperative period.
Under the circumstances, we find no error in this basis for the computation of the award for the personal injuries. Donovan v. New Orleans Ry. & Light Co., 132 La. 239, 61 So. 216, 48 L.R.A.,N.S., 109; Williams v. Parker, La.App. 1 Cir., 130 So.2d 711; Jenkins v. American Auto. Ins. Co., La.App. 2 Cir., Ill So.2d 837. Furthermore, the award is neither manifestly excessive nor manifestly inadequate. See, e. g., Jenkins v. American Auto. Ins. Co., above-cited; Matherne v. Crowther, La. App. 1 Cir., 96 So.2d 89.
Able counsel for the appellants argues that the award should be reduced because, inter alia, the plaintiff Dark did not accept surgery immediately after the accident, when it was recommended in November of 1959, but delayed in his decision to accept same until the trial in December of 1960, a year later. The plaintiff Dark explained that he was afraid of surgery and was familiar with other instances where knee surgery had been unsuccessful and delayed in accepting it until he saw there was absolutely no hope of cure or further employment without same. We do not think that under the circumstances the plaintiff Dark unreasonably failed to minimize the damages sustained by him as a result of the accident by not immediately accepting surgery, especially since as late as April 1960 he was advised by an orthopedist to try two or three months of restricted activity before submitting to surgery.
Appellants additionally urge that the award should be reduced because the plaintiff Dark died following perfection of the appeal, insofar as it included any items for permanent disability beyond decedent's date of death and for the surgery and the consequences thereof (which the appellants presume was not performed prior to the plaintiff Dark's death).
The present suit, alleging injuries received in an accident of October 8, 1959, was filed on July 11, 1960. The judgment in favor of the plaintiffs was signed on March 29, 1961. The defendants perfected their suspensive appeal by filing their bond on April 13, 1961. A motion to substitute the plaintiff Dark's heirs as plaintiff for him was filed in this court and granted upon the allegation that the plaintiff Dark had died on August 25, 1961.
The plaintiffs' counsel contend that Dark's death subsequent to perfection of the appeal can have no effect upon the award of damages because the function of the reviewing court is to determine whether or not the judgment of the trial court is correct under the evidence before it, and because the reviewing court cannot consider evidence not in the record. On the other hand, the appellants urge that it would be inequitable to affirm an award for permanent disability and for the cost of an operation, when we know conclusively that such damages awarded by the trial court have not been and will never be sustained because of the death of the plaintiff after the trial court judgment.
*467 In Louisiana the death of the injured person before trial limits his recovery for damages of loss of earnings and suffering to harms suffered before such death. Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475; A.L.I. Restatement of Torts, Section 926. But our research does not disclose a single case in Louisiana or elsewhere where a judgment for personal injuries was reduced because of the death of the injured plaintiff subsequent to the trial court judgment. See e. g. Maggio v. State Farm Auto Ins. Co., La.App. 1 Cir., 123 So. 2d 901, certiorari denied.
The general rule, furthermore, is that the appellate court cannot notice evidence outside of the trial court record. (In the present instance, for example, we cannot know without remanding the case whether or not the recommended surgery was performed upon the claimant before his death.)
Our Supreme Court recently set aside a decision of this court premised upon facts filed in the appellate court by stipulation subsequent to perfection of the appeal. Board of Commissioners for the Atchafalaya Basin Levee District v. St. Landry Parish School Board, La., 136 So.2d 44 (Docket No. 45,719, decided December 11, 1961). In so doing, the Court held, 136 So.2d 47, "It is, of course, hornbook that an appellate court can only consider a case in the situation presented by the record [i. e., at the time of the lower court judgment] for, to do otherwise, would be assuming original jurisdiction on appeal. See Begnaud v. Grubb and Hawkins, 209 La. 826, 25 So.2d 606 and Wilson v. Wilson, 219 La. 205, 52 So.2d 716."
Our highest tribunal also stated, "In the exercise of its appellate jurisdiction, this court only reviews judgments and proceedings of inferior courts as the cases are made up in said courts as shown by the transcripts of the records and proceedings brought up by the appeals. Code of Practice, arts. 894, 895. We cannot notice evidence dehors the record. Tanneret v. [Merchants Mut.] Ins. Co., 32 La.Ann. 663; Succession of Trouilly, 52 La.Ann. [276,] 279, 26 So. 851," Merchants' & Farmers' Bank & Trust Co. v. Hammond Motors, 161 La. 288, 108 So. 485, 486. Further, an appellate court "can consider and dispose of a case only in the condition in which it was when the judgment appealed from was rendered, and let subsequent events have such effect as the law may give them. Jefferson v. Herold, 144 La. 1064, 81 So. 714," Wiener v. Crystal Oil Ref'g Corp., 183 La. 879, 165 So. 131, 132.
This is the general rule in other jurisdictions also.
As stated in 5 C.J.S. "Appeal and Error" §1487, pages 777-778:
"While under some circumstances matters subsequent to the ruling complained of, including matters subsequent to the taking of the appeal, may be shown to an appellate court for the purpose of having complete justice done, ordinarily, the correctness of the ruling complained of will be determined on appeal as of the time when it was made and according to what the record shows was before the lower court at that time. So, as a general rule, matters subsequently communicated or brought to light or happening after the ruling objected to, and hence not considered by the lower court in connection with the ruling complained of, will not be considered on appeal. So the appellate court will ordinarily consider an appeal only on the evidence before the trial court at the time of the ruling in question. Affidavits filed after the ruling of the lower court will not be examined and new facts of which the trial court had no knowledge will not be introduced into the record by judicial notice. Pleadings filed after the ruling complained of will likewise be disregarded on appeal. * * *"
Also, at 5 C.J.S. "Appeal and Error" § 1488, pages 779, the following summary is made:

*468 "With the exception of matters which the trial court was bound judicially to notice, matters not offered or introduced in evidence in the lower court will not as a rule be considered by the appellate court; but this rule as to the matters which will be considered may be relaxed in the interests of justice, and does not exclude consideration by the appellate court of papers which were actually a part of the evidence submitted. * * *"
See also 3 Am.Jur. "Appeal & Error", Section 835, p. 377:
"It is a well-settled rule that, except as otherwise provided by law, new evidence cannot be considered on appeal; the appeal must be decided solely on the evidence produced in the court below and shown by the record."
With regard to the question of whether, as a matter of substantive law, the death of the plaintiff subsequent to rendition of the judgment and the perfection of the appeal affects the liability of the defendant to pay damages:
In Castelluccio v. Cloverland Dairy Products Co., 8 La.App. 723, 115 So. 796, the plaintiff husband brought suit for his wife's wrongful death. He died subsequent to a trial court award in his favor. In computing the award of damages on his cause of action for his wife's death, which was inherited by his children as his heirs, the Orleans Court allowed his loss of support from the decedent's wife's earnings only from her death until his, even though the latter death had occurred subsequent to perfection of the appeal. In reducing the trial court's award (although the specific holding of the reviewing tribunal is not clear in this regard, since only a small reduction of a small unitemized general award was made), the appellate court thus took into consideration the fact that the subsequent death of the plaintiff clearly limited, from the face of the record, a certain continuing special damage sustained by him as a result of the wrongful death of his wife.
And yet, in an earlier decision by the Supreme Court in the same case, it was held that the plaintiff's right of action for damages had become merged into the trial court judgment in his favor, which, following his death subsequent to judgment, his heirs inherited as a property right and of which they could not be deprived by such death. Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796. As the Court there stated at 115 So. 798:
"The judgment rendered in the lower court in favor of Salvador Castelluccio was a definitive or final judgment, not in the sense, it is true, that it was indefeasible as against the right of appeal, but it was such a judgment as could have been executed if a devolutive appeal only had been taken. It was such a judgment as could not be set aside by even a suspensive appeal, the only effect of which, in the present case, was to stay execution of the judgment. C.P. arts. 575 and 578.
"It was such a judgment as could have been seized, sold, or inherited, subject to the right of correction, if erroneous, on appeal. It was not a mere action in posse, or a demand unliquidated and undetermined. The claim of decedent had received the stamp of judicial sanction; it had become crystallized into an enforceable legal right, and had passed beyond the state of a mere untried right of action into the status of a property right duly adjudicated."
See also: Thomas v. Checker Cab Co., 229 La. 1079, 87 So.2d 605.
The general rule in other jurisdictions has been stated at 25 C.J.S. "Damages" § 81, pages 593-595 to be as follows:
"In estimating damages, consideration should be given to whether the injuries are shown to be temporary or permanent. Where the injuries are shown to be permanent in their character, it is proper to consider the probable *469 expectancy of life of plaintiff, and for this purpose standard life and mortality tables are admissible, except perhaps in a case where the life of the person injured terminates before the trial, although as to this last statement there is authority to the contrary. * *
"In estimating future elements of damage, such as for mental and physical pain and suffering, medical expenses and the like, plaintiff's condition as it exists after the injury and not as it was before the injury should be considered, and in the use of mortality tables plaintiff's age at the time of the trial should be taken, and in some cases a similar rule has apparently been adopted as to an award for diminished earning capacity. However, the better rule would appear to be that, in the case of an award for diminished earning capacity, plaintiff's expectancy of life should be considered as it was immediately before the injury complained of.
"The fact that the injured person dies subsequent to the rendition of the verdict does not affect the question of damages, but it has been held that where the injured person dies from other causes before judgment, the loss of earnings because of impaired earning capacity for the period of his life expectancy cannot enter into the award."
With the possible exception of the Castelluccio decisions, the only reported decision we could find which passed directly upon the question before us is Paul v. Atlantic Refining Company, 304 Pa. 360, 156 A. 94 (1931), which held without discussion: "That plaintiff died subsequent to the rendition of the verdict did not affect the question of damages." In this case the jury had allowed a substantial award for a tort-caused permanent disability, and the appellate court refused to take into consideration the fact that the duration of this disability had been lessened by the death of the plaintiff subsequent to the judgment.
There is a general rule that the loss suffered by an injured person is determinable by the conditions existing as of the date of the tort, such being the time when the right and cause of action for tort caused damages arose, so that unrelated subsequent events such as a remarriage do not affect the amount of recovery. See Mc Farland v. Illinois Central R. R. Co., 241 La. 15, 127 So.2d 183. On the other hand, the death of the injured person, at least prior to the trial, fixes and makes ascertainable the amount of damages for loss of earnings and pain, which are otherwise awarded on the basis of life expectancy. Payne v. Georgetown Lumber Co., 117 La. 983, 42 So. 475.
With much difficulty we have come to the following conclusions: The award of damages for personal injuries must be based upon the evidence available to the trial court, and, in view of its strictly appellate function, the reviewing court cannot reduce such damage on the basis of factual events occurring subsequent to the trial. The trial court's award of damages for personal injuries is based upon the evidence before it, including the life expectancy of the injured person; in making such award, the trier of fact necessarily takes into consideration that the injured person, despite the general life expectancy of persons of his group, may himself live far shorter than such general life expectancy. That the injured person dies one month before the appeal is heard rather than one month after the appellate judgment is final should not affect the correctness of the trial court's award, nor entitle the tort feasor in the one instance any more than in the other to a reduction of the award.
To avoid the indefinite prolongation of litigation, it is necessary to assign some arbitrary date beyond which factual events affecting quantum should not be considered. Logically, this could equally well be the date by which the appellate court judgment is final, rather than the date of the trial court judgment; but, if the appellate review *470 furnished the cut-off date for new factual matters, then cause for continued litigation will always be afforded by the ever-changing human circumstances affecting the evaluation of awards for personal injuries.
We prefer, then, to regard the plaintiff Dark's action for damages to have merged into the trial court judgment, which is a final determination of the matter subject only to appellate review to correct errors committed by the trial court. Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796. We therefore do not believe that factual events not in the record and occurring subsequent to finality in the trial court of its judgment, can be considered on appeal as affording a basis by which to question the factual determinations (such as quantum) incorporated in the trial court judgment reviewed.
Special damages clearly limited by the subsequent death of the plaintiff might be reduced if such reduced valuation were apparent from the record itself without the necessity for a remand, under Castelluccio v. Cloverland Dairy Products Co., 8 La. App. 723, 115 So. 796, assuming (but not necessarily agreeing) that such decision is correct. But this is not such an instance, for unless we remand these proceedings for further evidence we cannot know whether or not the plaintiff Dark underwent the recommended surgery prior to his death nor to what extent he continued to suffer from his tort-caused condition following rendition of the trial court judgment and prior to his death. And we do not believe that the appellants' statutory right to correct by appeal errors committed by the trial court, LSA-CCP Art. 2082, includes within its scope the right to prolong further the final conclusion of this litigation and to divest the appellees of the property right represented by the trial court's judgment because of an unrelated factual event occurring subsequent thereto, in the absence of trial court error.
We must also note that the plaintiff Dark was entitled to the award for this surgical expense whether or not he subsequently underwent the recommended surgery, for the basis of such award was not to compensate him for intended surgery but as a substitute for a greater award for the continued disability which would otherwise result, upon the equitable principle that, while a court may not compel a litigant to undergo surgery, it may limit his award to that which he should reasonably receive if he unreasonably refuses to minimize his damages by undergoing undangerous and customary corrective surgery.
The record supports the award of the other special damages. Therefore, for the reasons assigned, we will not disturb the trial court's award to the plaintiff Dark.

2. Plaintiff Mary Sue Dark ("the plaintiff wife").
The trial court awarded the plaintiff wife $7,000 for her personal injuries, which consisted of a severe and prolonged sprain of the cervical spine caused by a "whiplash" injury sustained in the accident, the aggravation of a rheumatoid condition (collagen disease) affecting the tendons and muscles, and her pain and suffering, including that resulting from occipital neuraligia, intermittently causing severe headaches and resulting from an injury to the occipital nerves sustained in the accident. The first attending physician also felt she had sustained a fractured rib in the accident. Superimposed upon the underlying rheumatoid condition, the sprain from the accident was persisting at the time of the trial over a year later, as a result of which the plaintiff wife still felt it necessary to wear a neck brace when fatigued and regularly to rest in a home traction equipment, and she still complained of continued soreness in her back and neck, as a result of which motion in her neck is restricted. The severe headaches of 24 to 48 hours' duration were still frequently experienced by the plaintiff wife as late as April, 1960, although by the time of the trial in December, 1960 she was only troubled by such severe episodes *471 two or three times per month, the headaches being precipitated by fatigue or strain.
The medical testimony indicates, however, that in the course of time she will eventually recover from her present condition (although it will take her "many months to do so", Tr. 418), but that she will have a small permanent physical disability of 5 to 10% resulting from the aggravation of her mild rheumatoid tendencies. Minor surgery may be necessary to end the occipital headaches if after a further period of time they continue to recur.
The defendant appellants argue that the present is simply a "whiplash" injury, for which recovery should be limited to $2500-$3500 under the decisions discussed in Landry v. Southern Farm Bureau Cas. Ins. Co., La.App. 3 Cir., 125 So.2d 474. However, the decisions there discussed consisted of transitory moderately severe strains resulting from a whiplash type of injury.
The present injury was of a more severe nature than those discussed; it produced more pain and limitation of activities during a more prolonged period. The plaintiff wife in the present case was still suffering from the effects of the injury at the time of the trial more than a year after the accident, and the medical prognosis is that she will continue to do so for many months and that, due to the injury's aggravation of rheumatoid tendencies, there will be a residual small permanent disability following maximum improvement. See, e. g., Self v. Johnson, La.App. 3 Cir., 124 So.2d 324; Dillon v. Pope, La.App. 1 Cir., 110 So. 2d 229; Bartholomaus v. H. G. Hill Stores, Inc., La.App.Orl., 97 So.2d 82.
A majority has reached the conclusion that, considering all the circumstances of this case as well as the decisions above-cited, the award of $7,000 to the plaintiff wife for these personal injuries is excessive and should be reduced to $4,000. (The writer of this opinion does not personally agree that the award is manifestly excessive. He yields, however, to the contrary view of the majority of the court.)

3. Decree.
For the foregoing reasons, the award of the trial court to the plaintiff Mrs. Dark is reduced from $7,000 to $4,000 and the judgment is otherwise affirmed, including the award to the plaintiff Dark. The costs of this appeal are assessed one-half to the appellee Mrs. Dark, and one-half to the defendants-appellants.
Amended and affirmed.